Filed 9/4/15; part. pub. & second mod. order 9/25/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CALIFORNIA SCHOOL BOARDS ASSOCIATION ET AL.,<br><br>    Petitioners and Respondents,<br><br>v.<br><br>STATE BOARD OF EDUCATION,<br><br>    Respondent and Appellant;<br><br>ASPIRE PUBLIC SCHOOLS, INC.,<br>    Real Party in Interest | A136327<br><br>(Alameda County<br>Super. Ct. No. RG07353566) |

THE COURT:

The written opinion, which was filed on September 4, 2015, is modified as follows:

In the first full paragraph on page 12 of the opinion, the quote that reads:

"The power to change the boundaries of the [school] district, as well as to define them in the first instance, is of legislative origin, and, whether exercised immediately by the Legislature or immediately by a board of supervisors—the local legislature—is, whenever exercised, a legislative act."

Shall be changed to:

"The power to change the boundaries of the [school] district, as well as to define them in the first instance, is of legislative origin, and, whether exercised immediately by

1

the Legislature or mediately by a board of supervisors—the local legislature—is, whenever exercised, a legislative act."

This modification does not effect any change in judgment.


Dated: _____                    _____, Acting P. J.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CALIFORNIA SCHOOL BOARDS ASSOCIATION ET AL., <br>     Petitioners and Respondents, <br><br> v. <br><br> STATE BOARD OF EDUCATION, <br>     Respondent and Appellant; <br><br> ASPIRE PUBLIC SCHOOLS, INC., <br>     Real Party in Interest | A136327 <br><br> (Alameda County <br> Super. Ct. No. RG07353566) |

Section 47605.8 of the Education Code[1] authorizes the State Board of Education to grant (or deny) an application for a "state charter school."[2] Subdivision (a) of the statute directs the Board of Education to "adopt regulations, pursuant to the Administrative Procedure Act (Chapter 5 (commencing with Section 11500) . . . of the Government Code) for the implementation of this section." The statute further directs that the "[r]egulations adopted pursuant to this section shall ensure that a [state] charter

---

[1] All undesignated statutory references are to the Education Code.

[2] A state charter allows the school to operate without the geographic restrictions imposed by district or county charters. (*California School Bds. Assn. v. State Bd. of Education* (2010) 186 Cal.App.4th 1298, 1305 (*CSBA*); and see §§ 47605, subd. (a), 47605.1, 47605.6, subd. (a)(1).)

1

school . . . meets the requirements otherwise imposed on charter schools . . . ." (§ 47605.8, subd. (a).)

It is the reference to "Chapter 5 (commencing with Section 11500)" in the statute that engenders the question before us on appeal.

Chapter 5 of the Administrative Procedure Act (APA) governs quasi-judicial proceedings, that is, it prescribes standards for adjudicatory proceedings undertaken by a governmental agency. (Gov. Code § 11501, subd. (b).) These include, for example, a written accusation or statement of issues, notice of right to a hearing, testimony under oath, cross-examination, and a written decision. (Gov. Code §§ 11503; 11504; 11505; 11509; 11511; 11513.)

A different part of the APA, Chapter 3.5, commencing with section 11340 of the Government Code, governs the rulemaking process of a state agency, that is, it prescribes the "minimum procedural requirements" for adopting substantive regulations to carry out the agency's statutory authority. (Gov. Code § 11346.) These include, for example, notice to the public and affected business and industry groups of the proposed regulations, opportunity for oral and written presentations by the public and any interested persons or entities, and notice of the date and time of the proceeding at which the proposed regulations will be considered. (Gov. Code §§ 11346.2–11346.9.)

In this case, the question is whether the reference to the adjudicatory provisions of the APA in section 47605.8 was intentional or erroneous. The State Board of Education (the Board), and *Amicus Curiae* California Charter Schools Association contend the reference was a drafting error. They argue that, in directing the Board to "implement" the statute, the Legislature intended to refer to the provisions of the APA governing the rulemaking process. The California School Boards Association and others, argue—and the trial court agreed—that the statutory language is plain and can be neither rewritten nor disregarded.

We agree with the Board for three reasons: First, the statute in question governs the approval or denial of a charter school application, which is a quasi-legislative

2

function—requiring consideration of policy questions and the opportunity for public input—and therefore is fundamentally at odds with the adjudicatory procedures mandated by Government Code section 11500 et seq. Second, legislative directives to adopt regulations for the implementation of a statute invariably call for a rulemaking process pursuant to Government Code section 11340 et seq.; the reference to the APA's adjudicatory provisions in section 47605.8 is therefore a complete anomaly. Third, the use of an adjudicatory proceeding to approve or deny state charters pursuant to section 47605.8 would be inconsistent with all other like provisions in the Charter School Act, none of which entail quasi-judicial proceedings.

Accordingly, we reverse the judgment and remand the matter for further proceedings.

## I. PROCEDURAL BACKGROUND

This is the second appeal in a long-running dispute between the California School Boards Association (CSBA), the California Teachers Association (CTA), the Association of California School Administrators (ASCA), and the Stockton Unified School District (collectively, petitioners) on the one hand, and the Board and Aspire Public Schools (Aspire), a charter school entity, on the other. The dispute originally centered on the Board's approval of a state charter for Aspire.[3]

Although the question before us is one of pure statutory construction, a description of the procedural history will provide some necessary context for understanding the parties' arguments. To set the stage, we first recite the text of the statute at issue.

A.      *The Statute*

The relevant provisions of section 47605.8 are as follows:

"(a) A petition for the operation of a state charter school may be submitted directly to the state board, and the state board shall have the authority to approve a charter for the operation of a state charter school that may operate at multiple sites throughout the state. The State Board of Education shall adopt regulations, pursuant to the Administrative

---

[3] Aspire is not a party to this second appeal.

Procedure Act (Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code) for the implementation of this section. Regulations adopted pursuant to this section shall ensure that a charter school approved pursuant to this section meets all requirements otherwise imposed on charter schools pursuant to this part, except that a state charter school approved pursuant to this section shall not be subject to the geographic and site limitations otherwise imposed on charter schools. . . . [¶] (b) The state board shall not approve a petition for the operation of a state charter school pursuant to this section unless the state board makes a finding, based on substantial evidence, that the proposed state charter school will provide instructional services of statewide benefit that cannot be provided by a charter school operating in only one school district, or only in one county. The finding of the state board in this regard shall be made part of the public record of the proceedings of the state board and shall precede the approval of the charter. [¶] . . . [¶] (d) The state board shall not be required to approve a petition for the operation of a state charter school, and may deny approval based on any of the reasons set forth in subdivision (b) of Section 47605.6."[4]

B.      *The Original Administrative Proceedings*

        Ten years ago, Aspire submitted a petition to the Board for a state charter, pursuant to the provisions of section 47605.8. Prior to the submission of Aspire's petition, the chair of the Advisory Commission on Charter Schools (ACCS)—an advisory body to the Board—reviewed a draft of the petition and provided advice to Aspire's chief executive officer on how the petition could be reworked to meet statutory requirements

---

        [4] The grounds for denial set forth in section 47605.6 are extensive. For example, the petition may be denied if it contains an unsound educational program; if the petitioners are unlikely to successfully implement the proposed program; if the petition does not have the requisite number of signatures; or if the petition does not contain reasonably comprehensive descriptions of 17 separate items, such as annual goals, measurable pupil outcomes, methodology for tracking pupil progress, governance structure, manner in which audits will be conducted, procedures for pupil suspension and expulsion, the means by which the school will achieve racial and ethnic balance, admission requirements, and attendance alternatives. (§ 47605.6, subd. (b).)

4

and garner the Board's support. Aspire's petition was also reviewed by staff of the California Department of Education (the Department) and by the ACCS as a whole. In 2005, and again in 2006, the ACCS favorably considered Aspire's petition at public meetings, after which the petition and the Department's staff report were forwarded to the Board. The report discussed the strengths and weaknesses of the petition and recommended a number of conditions of approval.

The Board considered Aspire's petition at its January 2007 meeting, which was attended by Aspire's chief executive officer, as well as other interested persons who spoke in favor of and against the petition. The Board's deliberations focused primarily on how to interpret the statute's language requiring a finding that the "school will provide instructional services of statewide benefit that cannot be provided by a charter school operating in only one school district, or only in one county." (§ 47605.8, subd. (b).) The Board members did not all agree on what was intended by that language, but Aspire's charter petition was approved by a majority of the Board, subject to the conditions proposed by the Department's staff.

Aspire signed a Memorandum of Understanding (MOU) that included many pages of detailed requirements to be completed before the schools became operational. Aspire thereafter opened at least two schools under the charter, and petitioners filed this action.

C.    *The Original Judicial Proceedings*

The petition and complaint rested on three claims sounding in traditional mandamus. (Code Civ. Proc., § 1085.)

In the first cause of action, petitioners alleged that the Board abused its discretion in approving Aspire's state charter based on a finding that Aspire's proposal would confer statewide benefits that could not be provided by operating in only one school district or only one county. Petitioners alleged that the finding made by the Board was based on an erroneous construction of the statute, and that it was not supported by any evidence. Petitioners requested a writ of mandate ordering the Board to vacate the

5

approval of Aspire's petition and to comply with the provisions of section 47605.8 with respect to future state charter applications.

In the second cause of action, petitioners alleged that the Board had a clear, present, and ministerial duty to enforce the conditions imposed on Aspire's charter and contained in the MOU, and that it failed to do so. They further alleged that this failure, and the Board's failure to rescind the charter when the conditions were not satisfied, entitled petitioners to a writ of mandate ordering the Board to vacate its authorization of Aspire's charter and to refrain from authorizing the opening of state charter schools in the future unless and until the conditions of approval imposed on the charters are met.

In the third cause of action, petitioners alleged that the Board "has never adopted regulations governing the process of review or the role of the ACCS with respect to statewide charter petition review. Specifically, the use of the ACCS to review and make recommendations with respect to statewide charter petitions has never been subject to the rulemaking requirements of the [APA] and its public comment provisions. Nor has [the Board] ever adopted regulations setting forth the process to be used for ACCS (or other) review of petitions for statewide charters, for hearings on those petitions, for amendments to petitions, for objections to such petitions, or for making decisions with respect to such petitions." Petitioners sought an order mandating that the Board rescind Aspire's charter because it had been approved using policies and procedures that were not in compliance with the APA. Petitioners asked the court to order the Board "to refrain from using policies and procedures for consideration of future petitions unless such policies and procedures have been promulgated in compliance with the requirements of the [APA]."[5]

Aspire and the Board filed serial demurrers to the various causes of action, which were sustained. The trial court disagreed with petitioners' interpretation of the statute governing the approval of state charter petitions, rejected petitioners' contentions that the

---

[5] In addition, in their fourth cause of action, petitioners sought injunctive relief on the first issue (statutory construction) and, in their fifth cause of action, sought declaratory relief on the third issue (APA claim).

Board had a clear, present, and ministerial duty to enforce the conditions of approval, and concluded that petitioners had not alleged facts sufficient to state a claim that the Board was using policies and procedures that were not APA-compliant. The trial court entered judgment dismissing the action, and petitioners appealed.

D.     *The Original Appeal*

We reversed the trial court with respect to all issues.

First, we concluded that petitioners' interpretation of section 47605.8 was correct and the Board's interpretation incorrect. The Board had construed the statute to mean this: Before approving a state charter, the Board must find that the school will provide a statewide benefit that cannot be provided "through a charter that only allows the [applicant] to operate *in one location*." (*CSBA*, *supra*, 186 Cal.App.4th at p. 1316.) We perused the legislative history reflecting the Legislature's concern about historical problems with charter schools that were operating in widely dispersed locations under a single charter. Based on our understanding of the legislative intent, we held that the statutory scheme favored local charters and allowed statewide charters to be approved only if the Board could make a finding that the statewide benefits of the charter could not be achieved through a *series* of local charters.

Second, we concluded that petitioners' pursuit of a writ of mandate requiring the Board to enforce Aspire's conditions of approval was at least theoretically viable.

Third, we concluded that the Board was subject to the rulemaking provisions of the APA (Gov. Code, § 11340 et seq.), and that petitioners had made out a claim, "albeit skeletal," that the Board had failed to comply with those provisions of the APA. We reasoned that petitioners had alleged facts sufficient to raise a question whether the ACCS used policies and procedures that should have been, but were not, promulgated under the APA's rulemaking provisions. We refrained, however, from expressing any views on the merits of that question because, if it could be shown that the ACCS's policies and procedures did not " ' "depart from or embellish upon" ' " the statutory language (*CSBA*, *supra*, 186 Cal.App.4th at p. 1333, citing *Morning Star Co. v. State Bd.*

7

*of Equalization* (2006) 186 Cal.4th 324, 336), but merely reiterated the statutory and regulatory scheme, then compliance with the rulemaking process would not be required. That question, we concluded, could not be decided on demurrer.

The matter was remanded for further proceedings.

E. *Proceedings after Remand*

Following the remand, the parties pursued both administrative and judicial remedies.

Within a month of the issuance of the remittitur, Aspire submitted to the Board a proposed "Material Revision to Statewide Benefit Charter Petition" (Material Revision) which, in essence, requested re-approval of the Aspire statewide charter in conformity with the statute as interpreted by this court. Aspire also requested that the Board make a finding that it had complied with all conditions of approval previously imposed on its charter and asked the Board to waive any deadline that Aspire may not have met. Aspire's Material Revision request was placed on the agenda for the Board's February 2011 public meeting.

In early February, counsel representing three of the petitioners (CSBA, CTA, and ACSA), delivered to the Board a letter objecting to consideration of Aspire's proposed Material Revision and requesting that the board take no action on any statewide charters until the Board adopted regulations to implement the statutory requirements for statewide charters, and established a "clear, transparent process for considering statewide benefit charter petitions." Ultimately, Aspire's item was not considered by the Board in February for reasons not elucidated in the record. The Board did, however, vote unanimously to proceed with amendments to existing regulations to "revise the requirements for statewide benefit charters."

In the meantime, the case proceeded in court; the parties filed case management statements and the Board and Aspire filed their Answers to the Petition and Complaint. A case management conference was held in April.

8

On the administrative side, Aspire's submittal of its Material Revision was returned to the Board's agenda for consideration in May. This apparently sparked an attempt by petitioners to enjoin the administrative proceedings, which the court rejected.

Petitioners then delivered to the Board "lengthy procedural and substantive arguments and evidence" in opposition to Aspire's proposal.[6] The Board held a public hearing, and, following the close of public comment, approved the Material Revision. The approval was based on findings that Aspire's enhanced ability to secure statewide bonds and to expand its teacher residency program constituted "statewide benefits" that could not be provided through a series of local charters. The Board also considered and approved Aspire's request for a finding that Aspire had complied with all of its previously imposed conditions of approval and for a waiver of any deadlines for compliance that may not have been met.

Back in court, the Board and Aspire filed a motion for summary adjudication, which was denied. Shortly thereafter, petitioners filed points and authorities challenging the approval of the Material Revision. They did not file a supplemental pleading, but proceeded under their original petition for writ of mandate. With regard to the first cause of action, petitioners argued that the approval should be invalidated because there was "no legal or factual basis for the . . . finding that [the] proposed instructional services could not be provided through locally approved charters." This claim was adjudicated below in petitioners' favor. Since then, this issue has been settled by the parties, and so it is not before us.

The second cause of action—seeking a writ of mandate requiring the Board to enforce Aspire's conditions of approval—was dismissed in the trial court, the Board having made a finding that Aspire had satisfied all of the previously imposed conditions.

---

[6] At the Board's meeting, counsel for petitioners stated that their materials had been submitted to the Board two days before the hearing; two of the Board members stated they did not receive petitioners' packet of papers until the evening before the hearing, and therefore petitioners' documents were not "available."

With respect to the third cause of action, petitioners renewed their APA claim, but fundamentally altered their position.

Having been informed that the Board would no longer be using the ACCS to review statewide charter applications, petitioners advanced a new theory without seeking leave to amend their petition. The new theory was that section 47605.8, by its terms, required the board to adopt regulations under the *adjudicatory* provisions of the APA, and not, as petitioners had all along contended, pursuant to its *rulemaking* provisions. Additionally, although the prayer in the petition asked that the Board be ordered to *refrain* from using policies and procedures unless they have been promulgated in compliance with the APA, in their memorandum, petitioners "urge[d] the court to include in any writ issued a directive to [the Board] *to adopt* procedural rules in accordance with Government Code sections 11500 et seq." (Italics added.)

Petitioners acknowledged that their "focus" in the prior proceedings had been on the Board's use of "policies and procedures that have not been adopted in compliance with the APA—particularly [the] use of the ACCS." Glossing over this change in "focus," petitioners simply asserted, "[i]t cannot be disputed that [the Board] has failed to adopt the adjudicatory procedures required by section 47605.8," or any other hearing procedures, so "there are currently *no* procedures in [the Board's] regulations for state charter petitions or material revisions." Petitioners complained that the absence of such adjudicatory rules (e.g., no testimony under oath, no opportunity for objections or for questions to any witness, reliance on hearsay) places opponents of a state charter application at a disadvantage. They asked the court to order the adoption of "procedural rules in accordance with Government Code sections 11500 et seq."

In opposition, the Board and Aspire urged the court not to entertain this new claim because it sought relief based on a theory that was not alleged in the petition and complaint. The Board also pointed out that the basis for petitioners' original APA claim—the Board's use of the ACCS in reviewing statewide charter petitions without

10

having promulgated regulations governing ACCS's role and procedures—had been rendered moot by the Board's decision no longer to involve ACCS in that process.

The Board, however, also argued the merits of the issue. It asserted that the reference to Government Code section 11500 et seq. indicates a drafting error because section 47605.8 makes no mention of an adjudicatory process—rather, it directs the Board to "adopt regulations implementing the [statute]" and to ensure that a statewide charter school meets all the requirements imposed on other charter schools. Further, the Board argued, the approval or denial of a charter school application is not a quasi-judicial proceeding, but is a decision made at an " 'open and public' meeting[] in accordance with the Bagley-Keene Open Meeting Act and [the Board's] Bylaws." At those meetings, "stakeholders, members of the public, and experts in the field, among others, have the opportunity to address the Board regarding items on the agenda," which they would be unable to do in an adjudicatory proceeding governed by Government Code section 11500 et seq.—an adversarial, fact-finding process that excludes participation of non-parties. Additionally, the Board pointed out that the Legislature did not require an adjudicatory procedure for other similar Board actions, such as when it reviews the denial of a charter by a local or county school district and decides whether it should have been approved. It would make no sense, the Board argued, for the Legislature to require an adjudicatory process for the Board's decision to approve a state charter but not for the Board's decision to approve a local charter.

In reply, on the procedural issue, petitioners took the position that their theory was not "new" and had actually been "included in the [p]etition from the beginning," pointing to their reference to Government Code section 11500 et seq. in one paragraph of the petition and complaint. Petitioners, however, made no attempt to reconcile their new claim with their prior arguments in which they repeatedly asserted that the Board was required to adopt regulations under the *rulemaking* provisions of the APA (Gov. Code § 11340 et seq.).

11

On the merits, petitioners argued that the statute means what it says—the Board must adopt regulations pursuant to Government Code section 11500 et seq. Petitioners theorized that the Legislature may have wanted a record that "reflect[s] the evidentiary protections of an adjudicatory hearing," or "it may have wanted to emphasize the importance of local approval and the limited nature of state charter approval by making the evidentiary process more substantial for applicants." Petitioners contended there was good reason for the Legislature to treat state charters and local charters differently. "[T]he statute makes clear that the presumptions for state charters and local charters are exactly the opposite of one another: the law requires approval of a local petition unless the district can make certain statutory findings, while the law prohibits approval of a state charter unless certain statutory findings are made and are supported by substantial evidence." Therefore, petitioners argued, it would not be unreasonable for the Legislature to require "a solid evidentiary basis for any state charter approvals."

In the alternative, petitioners argued that even if the statute required only a rulemaking process, the Board was still not in compliance with the law because it was using internal "practices" to process charter petitions and had not adopted regulations that would give the public notice of the procedures to be used for reviewing, holding hearings on, making amendments to, making objections to, or making decisions on state charter petitions.

F.     *The Trial Court's Decision*

The trial court agreed with petitioners that the statute on its face requires the adoption of quasi-judicial procedures. The court rejected the Board's contention that this was a new claim, stating only, "the claim is not outside the scope of the pleadings." The trial court also rejected the Board's and Aspire's contention that the reference to Government Code section 11500 was a drafting error that rendered both the statute and the statutory scheme internally inconsistent. Without any analysis of the Board's arguments, the court concluded that "the statute is unambiguous and specific." It being undisputed that the Board had not adopted adjudicatory procedures, the court granted

petitioners' requested remedy, ordering, inter alia, that the Board "adopt regulations in compliance with Education Code section 47605.8, subdivision (a)." After judgment was entered, this appeal ensued.

## II. ANALYSIS

### A. *Is Petitioners' APA Claim Outside the Pleadings?*

We consider first whether petitioners' new APA-based claim is outside of the pleadings. (*People v. Toomey* (1984) 157 Cal.App.3d 1, 11 [party must recover on cause of action alleged in complaint]; *Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.* (2005) 130 Cal.App.4th 1078, 1091 (*Emerald Bay*) ["The pleadings establish the scope of an action and, absent an amendment to the pleadings, parties cannot introduce evidence about issues outside the pleadings"].) Petitioners argue here, as they did below, that their new theory *was* included in the petition. They state that, while their "focus" has "shifted," they have "*from the beginning* focused on [the Board's] lack of hearing procedures and its failure to comply with the requirement in section 47605.8(a) that [the Board] adopt regulations 'pursuant to the Administrative Procedure Act (Chapter 5 commencing with Section 11500) . . . for the implementation of this section,' i.e., the state charter provision." (Italics added.) Charitably, this argument is disingenuous.

Petitioners' recital of the content of the petition is literally correct. They did allege that the Board had failed to adopt regulations "pursuant to the [APA] (Chapter 5 commencing with Section 11500)" in one line of the petition. That they were merely reciting the statute is obvious. Petitioners cannot seriously claim that "from the beginning," they contended the Board was required to adopt regulations to put in place an *adjudicatory process*, and nothing in the record supports that contention. Both in the trial court and on appeal, petitioners repeatedly argued that section 47605.8 required the Board to engage in a *rulemaking* process to develop regulations, pursuant to Government Code section 11340 et seq., that would govern the policies and procedures utilized by ACCS (or others) to process and review state charter applications. Indeed, petitioners

13

admit they did not realize until 2011 (four years into the litigation) that section 47605.8 referred to the quasi-judicial provisions of the APA.

We need not, however, parse the question of whether petitioners should have filed an amended pleading before pursuing their new APA theory. The parties both here and below have briefed the substantive issue extensively. As the Board does not claim any prejudice due to petitioners' failure to seek leave to amend, we see no reason not to proceed to the merits. "It has long been settled law that where (1) a case is tried on the merits, (2) the issues are thoroughly explored during the course of the trial and (3) the theory of the trial is well known to court and counsel, the fact that the issues were not pleaded does not preclude an adjudication of such litigated issues and a review thereof on appeal." (*Duncan v. Sunset Agricultural Minerals* (1969) 273 Cal.App.2d 489, 494.)

B.      *The Merits of Petitioners' APA Claim*

        1. The Plain Language of the Provision

Petitioners' first-line argument is that the statute means what is says, and its plain meaning cannot be rewritten or ignored by the courts. We, however, disagree with petitioners' interpretation of the "plain meaning" of the statute.

Section 47605.8, subdivision (a), provides that the Board "shall adopt regulations, *pursuant to the Administrative Procedure Act (Chapter 5 (commencing with Section 11500 ). . . of the Government Code)* for the implementation of this section." (Italics added.) Taken literally, these words mean that the Board must adopt regulations using the adjudicatory procedures of the APA. As the Board has argued, this makes no sense. An agency does not—and cannot—promulgate administrative regulations using an evidentiary hearing process. Regulations must be adopted under the rulemaking procedures of the APA. (Gov. Code § 11346.)

Petitioners argue, however, that the statute should be read to mean that the Board must adopt regulations pursuant to the rulemaking process, but the content of the regulations must be quasi-judicial. This interpretation is clearly at odds with the meaning of the phrase "adopt regulations pursuant to the Administrative Procedure Act" utilized in

14

virtually every other statute—a phrase which describes not the content of the regulations, but the process for their adoption.  (See Section II(B)(4), *post.*)  But even if the statute could be so construed, we conclude this was not what the Legislature intended for the reasons we discuss.

2.  <u>The Approval of a Charter for a School is a Quasi-Legislative Function</u>

Petitioners argue that the Legislature intended the approval of a state charter (as distinct from local charters) to be a quasi-judicial act, this by virtue of (1) the reference to Government Code section 11500 et seq. in section 47605.8, and (2) the requirements in the statute that the Board's decision be supported by "findings," based on "substantial evidence," which must be included in the public record of the Board's proceedings. Petitioners say these factors are "highly suggestive" of a quasi-judicial determination. And, petitioners conclude, because a quasi-judicial determination is one which "involves the application of the general statutory criteria to a specific applicant, as well as a required showing of factual support for [the Board's] ultimate determination," the approval or denial of a state charter application is a quasi-judicial exercise.

Petitioners' theory does not persuade us, as it rests on a superficial reading of the statute and ignores both the statutory context and large swaths of precedent.

We begin with the established principle that the creation and alteration of municipalities and local districts are fundamentally legislative functions.  (See, e.g., *City of Santa Cruz v. Local Agency Formation Com.* (1978) 76 Cal.App.3d 381, 387 (*City of Santa Cruz*) ["It has long been held that when a local agency determines the boundaries of a city or whether territory should be annexed to such an entity, it is acting in a quasi-legislative capacity" (italics omitted)]; *Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 495 [decision whether to approve the annexation of land by city is quasi-legislative]; *Wilson v. Hidden Valley Mun. Water Dist.* (1967) 256 Cal.App.2d 271, 278 (*Wilson*) [decision whether to exclude a petitioner's property from a water district and allow it to be annexed to a different water district was a quasi-legislative act].)

15

Since the late nineteenth century, the creation of or alteration to a school district has been recognized as a legislative or quasi-legislative act.  "The power to change the boundaries of the [school] district, as well as to define them in the first instance, is of legislative origin, and, whether exercised immediately by the Legislature or immediately by a board of supervisors—the local legislature—is, whenever exercised, a legislative act."  (*Hughes v. Ewing* (1892) 93 Cal. 414, 417; accord, *Antelope Valley U. H. S. Dist. v. McClellan* (1921) 55 Cal.App. 244, 247; see also *Worthington S. Dist. v. Eureka S. Dist.* (1916) 173 Cal. 154, 156 [the Legislature holds plenary power over school districts, and it may delegate to boards of supervisors, under certain conditions, powers of annexation]; *Fullerton Joint Union High School Dist. v. State Bd. of Education* (1982) 32 Cal.3d 779, 786, fn. 3 (plur. opn. of Broussard, J.) (*Fullerton*), disapproved on another ground in *Board of Supervisors v. Local Agency Formation Com.* (1992) 3 Cal.4th 903, 917–922, ["Subject only to constitutional limitations, the Legislature has plenary power over the formation, dissolution or change of boundaries of school districts.  [Citations]"]; *City of South Gate v. Los Angeles Unified School Dist.* (1986) 184 Cal.App.3d 1416, 1421 [district's boundary adjustment between high schools was quasi-legislative].)

A charter school is "deemed to be a 'school district' " for purposes of statutory and constitutional funding allocations.  (§ 47612, subd. (c).)  Consequently, the approval of a charter creates a school district and, like the creation of any other district, is a quasi-legislative act.

But we do not rest on this analysis alone.  We reach the same result when we approach the issue from a broader perspective.

3.     Quasi-Legislative vs. Quasi-Judicial Acts

"The courts in the past have devised several general formulations to assist them in differentiating quasi-judicial from quasi-legislative action.  One such formulation is as follows:  'The one determines what the law is, and what the rights of parties are, with reference to transactions already had; the other prescribes what the law shall be in future cases arising under it.'  [Citations.]  Another is that the one determines individual rights,

16

while the other involves the exercise of a discretion governed by considerations of the public welfare. [Citation.] While such formulations may be helpful, they do not provide an answer in every case. The basic inquiry, in our opinion, must be into the nature of the *function* performed. [Citation.]" (*Wilson, supra,* 256 Cal.App.2d at pp. 279–280; and see *Joint Council of Interns & Residents v. Board of Supervisors* (1989) 210 Cal.App.3d 1202, 1209–1210 (*Joint Council*) ["At bottom 'the distinction between the quasi-legislative and quasi-judicial decision contemplates the function performed rather than the area of performance. . . .' [Citation]"].)

As explained in *Wilson*, the hallmark of a quasi-legislative decision is that the agency's determination is informed by public policy, that is, how the decision will affect the interests of the community. In *Wilson*, a property owner petitioned the water district to exclude her land from the district and allow it to be annexed to another district. "In passing upon the two petitions the . . . District was not hearing them as a disinterested tribunal deciding merely the question of whether the lands directly and immediately affected . . . [should] be excluded from the District or permitted to be annexed by other local public entities. The board hearing these petitions was the governing board of the District. [Citation.] As such, its dominant concern had to be the effect its actions would have not merely upon the interests of those owning or living upon the land immediately affected by the petitions,[] but also upon the interests of the people owning or living upon the land within the remainder of the District." (*Wilson, supra,* 256 Cal.App.2d at p. 280, fn. omitted; and see *City of Santa Cruz, supra,* 76 Cal.App.3d at p. 389 [quoting *Wilson*, a quasi-legislative action " 'involves the exercise of a discretion governed by considerations of public welfare' "]; *20th Century Ins. Co. v. Garamendi* (1994) 8 Cal.4th 216, 276–277 [a decision that involves consideration of factors beyond the mere application of existing rules to existing facts is quasi-legislative].)

Here, the exercise of discretion by the Board in creating—or not creating—a state charter school involves considerations of interests beyond those of just the applicant. Indeed, in a different context, petitioners argued as much: "The approval of a new

17

statewide charter petition potentially impacts the funding and facilities decisions of the local districts in which the charter schools will be located. . . . [¶] [S]tatewide charters permit the holder to operate campuses in multiple school districts throughout the state, free from local district governing board oversight. These facts place a premium on public participation in the original review and consideration of the petition, as this may be the only public opportunity to address concerns or request that certain conditions be met before approval."

Thus, according to petitioners, a decision to approve or deny a state charter should not be limited to a simple application of the law to the facts contained in the charter petition, but should include consideration of the charter's effects on local school districts and should take into account public concerns regarding the proposed charter and its conditions of approval. This is a quintessentially quasi-legislative action using " 'the exercise of a discretion governed by considerations of the public welfare.' " (*City of Santa Cruz, supra*, 76 Cal.App.3d at p. 389.) And, the public airing of views that is part and parcel of the Board's quasi-legislative determination cannot occur in an adjudicatory process contemplated by Government Code section 11500 et seq., which, although open to public view (Gov. Code, § 11425.20, subd. (a)), is not open to public comment or participation. (See Gov. Code, §§ 11125.7, subd. (f), 11513, subd. (b).)[7]

Petitioners nevertheless maintain that the statute's directives—requiring the Board to make a "finding" based on "substantial evidence" and requiring this finding to be made part of the "public record" of the Board's "proceedings"—support the proposition that the

_____

[7] Petitioners posit that the Board could avoid the downside of an adjudicatory process—i.e., exclusion of interested parties, such as petitioners and the public, from participation in the hearing—by adopting regulations that would (1) characterize affected school districts as "parties" to the proceeding, (2) allow other interested persons to be interveners, (3) allow non-parties with relevant information to participate as witnesses, (4) allow public input before a final decision is made, and (5) commit the Board to deliberate on the decision in a public forum, instead of in closed session. Petitioners by this argument seek the procedural protections of a quasi-judicial process while maintaining the transparency and public participation of a quasi-legislative process, but offer no legal support for such a hybrid.

18

Legislature intended the Board's process to be an adjudicatory one. They argue, "[e]ach of the requirements described above are highly suggestive of a quasi-judicial determination, i.e., a determination that 'involve[s] the application of rules to specific facts and specific individuals.' [Citation.]"

This argument ignores well settled precedent holding that it is the *function* and not the process that determines whether an action is judicial or legislative in nature. (*20th Century Ins. Co. v. Garamendi*, *supra*, 8 Cal.4th at pp. 275–276.) *Wilson* provides an early example of this principle.

In *Wilson*, the court held that the water district's action in denying a request to remove land from the district was quasi-legislative despite the fact that the decision involved hearings and fact-finding. The court's explanation is instructive. "[T]he presence of certain elements usually characteristic of the judicial process [does not] mean that the board's action was quasi-judicial. In this case the . . . District, in denying petitioners' requests . . . acted in response to specific petitions, with regard to specific parties and after hearing evidence. In these respects the decisions made by the board and the procedure used in arriving at its decision embodied characteristics of the judicial process. [¶] But these characteristics of the proceedings are not alien to the legislative process. Legislative bodies often act in response to specific petitions and with regard to specific parties. [Citations.] Furthermore, the hearing process is not confined to the courts. The Legislature and administrators exercising quasi-legislative powers commonly resort to the hearing procedure to uncover, at [least] in part, the facts necessary to arrive at a sound and fair legislative decision. [Citations.] Hence the presence of certain characteristics common to the judicial process does not change the basically quasi-legislative nature of the subject proceedings." (*Wilson, supra,* 256 Cal.App.2d at p. 279, fn. omitted; and see *City of Santa Cruz, supra,* 76 Cal.App.3d at pp. 387–388 [fact that the Commission holds public hearings and considers testimony to ascertain facts does not change quasi-legislative nature of action setting municipal boundaries].)

The same is true where a "finding" is required.  "[T]he fact that [a statute] required the Board [of Supervisors] to make a 'finding' of cost-effectiveness or feasibility is of no import under the circumstances presented here.  Although the statutory obligation to make a 'finding' is a characteristic shared with adjudicatory proceedings, it does not stamp the function with an adjudicative character.  [Citation.]"  (*Joint Council, supra,* 210 Cal.App.3d at p. 1212.)

Nor does the additional requirement that the Board's finding be supported by "substantial evidence" (§ 47605.8, subd. (b)) change the analysis.  It is not uncommon for this kind of statutory gloss to be applied to the review of quasi-legislative actions.  (See, e.g., Pub. Resources Code § 21168.5 [in reviewing an agency's action for compliance with the California Environmental Quality Act, "the inquiry shall extend only to whether there was a prejudicial abuse of discretion.  Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence"]; *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 658 [Pub. Resources Code § 21168.5 applies to quasi-legislative actions].)

Finally, the statute's requirement that the finding be made part of the "public record of the proceedings of the state board" (§ 47605.8, subd. (b)) simply echoes the provisions of the Bagley-Keene Open Meeting Act (Gov. Code, § 11120 et seq.), which prescribes that all state bodies provide public notice of their meetings, publish their agendas, and hold open and public meetings.  (Gov. Code, §§ 11123, 11125, 11125.1.) "[I]t is the intent of the law that actions of state agencies be taken openly and that their deliberation be conducted openly."  (Gov. Code, § 11120.)  Read in this context, the statute's requirement that the Board's finding be made part of the public record is not "highly suggestive of a quasi-judicial determination."  (See *California Radioactive Materials Management Forum v. Department of Health Services* (1993) 15 Cal.App.4th 841, 858, disapproved on another ground in *Carmel Valley Fire Protection Dist. v. State*

20

*of California* (2001) 25 Cal.4th 287, 305, fn. 5 [specification in statute that there be a "hearing on the record" is not a term of art referring only to quasi-judicial hearings].)

In sum, we find no support in the law for petitioners' position that the Board's decision-making process on a state charter application is a quasi-judicial rather than quasi-legislative function.

    4.    <u>Petitioners' Interpretation of the Statute Cannot be Reconciled with Statutory Schemes</u>

Our conclusion that the Legislature intended to refer to the rulemaking rather than the adjudicatory provisions of the APA in section 47605.8 is also buttressed by the statute's language and context.

While the Legislature has the power to require an agency to conduct adjudicatory proceedings in accordance with Government Code section 11500 et seq., and has done so in scores of statutes, it is extremely doubtful it meant to do so here because the plain language of section 47605.8 shows no such intent.

In virtually every statute requiring a state agency to conduct adjudicatory proceedings under Chapter 5 of the APA, the Legislature directs the agency to conduct "proceedings" or "hearings" or "appeals" "in accordance with" or "pursuant to" Government Code § 11500 et seq.[8] No such language was included in section 47605.8.

Conversely, when the Legislature is authorizing or mandating an agency to adopt regulations to implement the provisions of a statute or statutory scheme, it uses language directing a rulemaking process, e.g., "[t]he department shall adopt regulations pursuant to

---

[8] Examples:  "[The *[or]* all] hearings . . . shall be conducted in accordance with the Administrative Procedure Act (Chapter 5 (commencing with section 11500) . . . ." (Ins. Code, §§ 10753.18.5 & 10755.18.5; see § 8403); "[the *[or]* all] proceedings [] shall be conducted in accordance with [Government Code section 11500 et seq.]" (Rev. & Tax. Code, § 671; Bus. & Prof. Code, § 3092); "[the *[or]* any] hearing shall be held in accordance with [Government Code section 11500 et seq.]" (Health & Saf. Code, § 128775, subd. (b); Fin. Code, § 12105); "[an appeals panel] shall consider audit appeals pursuant to the administrative adjudication provisions of [the Government Code]" (Educ. Code § 41344.1).

the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340) . . .) to implement this chapter. . . ."  (Pen. Code, § 1174.8.)[9]

Section 47605.8, however,  provides, "[t]he State Board of Education shall adopt regulations, pursuant to the Administrative Procedure Act (Chapter 5 (commencing with Section 11500) . . . of the Government Code) for the implementation of this section." The reference to Chapter 5 is thus completely at odds with every other statute in which the Legislature directs the adoption of regulations to implement the law.

That this was done in error is not only possible, but has happened before.  In 1995, when the APA was amended to add the provisions contained in the current version of Chapter 4.5, it also made "technical, nonsubstantive changes" to various statutes, including former section 232 (now section 221.1, as amended and renumbered by Stats. 1998, ch. 914, § 25, p. 6096) of the Education Code.  (Legis. Counsel's Dig., Sen. Bill No. 523, 5 Stats. 1995 (1995–1996 Reg. Sess.) Summary Dig., p. 405.)  That statute had provided, "[t]he State Board . . . shall issue regulations pursuant to Chapter 3.5 (commencing with Section 11340) *and Chapter 5 (commencing with Section 11500)* of Division 3 of Title 2 of the Government Code, commonly referred to as the Administrative Procedure Act, to implement the provisions of this chapter."  (Stats. 1987, ch. 118, § 1, p. 403, italics added.)  The 1995 "cleanup" bill removed the clearly erroneous reference to Section 11500 et seq.  (Stats. 1995, ch. 938, § 5, p. 7106.)

---

[9] Additional examples:  "The department [*or*administrator] shall [*or* may] adopt regulations to implement this chapter [*or* act] in accordance with [Government Code section 11340 et seq.]" (Welf. & Inst. Code, §§ 9745, 10077; Gov. Code, § 8670.7.5); "[t]he board may adopt regulations relating to the administration and enforcement of this part pursuant to [Government Code section 11340 et seq.]" (Rev. & Tax. Code, § 46001.5); "[t]he department shall adopt rules and regulations for the implementation of this division.  [¶] Rules and regulations . . . shall be adopted in accordance with [Government Code section 11340 et seq.]" (Pub. Resources Code, § 10240); "[t]he board shall adopt regulations in accordance with [Government Code section 11340 et seq.] to establish policies, guidelines, and procedures to implement this article" (Bus. & Prof. Code, § 4127).

We observe, additionally, that section 5096.2 of the Business and Professions Code contains the same error, but in reverse. There, the rulemaking provisions of the APA are cited several times in connection with provisions clearly directing an adjudicatory process. For example, it provides: "The provisions of the Administrative Procedure Act (*Chapter 3.5 (commencing with Section 11340)* of Part 1 of Division 3 of Title 2 of the Government Code), including, but not limited to, the commencement of a disciplinary proceeding by the *filing of an accusation* by the board, shall apply under this article." (Bus. & Prof. Code, § 5096.2, subd. (f), italics added.)[10]

While we have not canvassed all 360-odd volumes of the Annotated Codes, our focused search revealed no other statute that makes reference to the adjudicatory provisions of the APA in conjunction with a directive to adopt regulations to "implement" legislation. This leads us to conclude that the reference was not intended by the Legislature but was the result of a drafting error.[11]

---

[10] The error pervades the statute. It also provides: "(b) The board may revoke practice privileges using either of the following procedures: [¶] (1) Notifying the individual in writing of all of the following: [¶] (A) That the practice privilege is revoked. [¶] (B) The reasons for revocation. [¶] (C) The earliest date on which the individual may qualify for a practice privilege. [¶] (D) That the individual has a right to appeal the notice and request a hearing under the provisions of the Administrative Procedure Act (*Chapter 3.5 (commencing with Section 11340*) of Part 1 of Division 3 of Title 2 of the Government Code) if a written notice of appeal and request for hearing is made within 60 days. [¶] . . . [¶] (2) Filing a statement of issues under the Administrative Procedure Act (*Chapter 3.5 (commencing with Section 11340)* of Part 1 of Division 3 of Title 2 of the Government Code)." (Bus. & Prof. Code, § 5096.2, italics added.)

[11] At oral argument petitioners cited to Government Code section 12781 as an example of a statute that requires the promulgation of regulations "that are necessary and appropriate for the effective administration of this chapter," *pursuant to* Chapter 3.5, Chapter 4, *and* Chapter 5 of the APA, and thus, the phrase "promulgation of regulations pursuant to the [APA]" refers to the adjudicatory as well as rulemaking provisions of the APA. We observe, however, that the statute is unusual, and possibly unique in that it spells out the agency's duty to adopt both quasi-legislative rules and quasi-judicial procedures to govern the standards to be applied and the process to be followed with respect to grant applications for Community Services Block Grants. For example, the regulations are required, at minimum, to define (1) the due process rights of eligible

Applying a narrower lens, we similarly conclude that a literal reading of the statute would be inconsistent with the statutory scheme of the Charter School Act (the Act) (§ 47600 et seq.). Pursuant to the Act, a charter school can be created in one of five ways: By application to a school district (§ 47605), by application for a county charter to a county board of education (§§ 47605.5, 47605.6), by appeal of a denial by a school district to a county board of education (§ 47605, subd. (j)(1)), by appeal of a denial by a county board to the Board (*ibid.*), or by application for a state charter to the Board (§ 47605.8). In each instance, the Act requires that the charter application meet all of the statutory requirements found in section 47605, subdivisions (a) and (b). (§§ 47605, subd. (j)(1), 47605.8, subd. (a).) Findings are required for the denial of a local charter and for the approval of a state or county charter (§§ 47605, subds. (b) & (j)(1); 47605.8, subd. (b); 47605.6, subd. (a)(1)), but only section 47605.8 cites to Chapter 5 of the APA.

It is not disputed that all decisions on *local* charter applications at every level—district, county and Board—are quasi-legislative actions, but petitioners urge us to treat the Board's decision on a state charter as an action fundamentally different in nature. Petitioners theorize that the Legislature intended to create an adjudicatory process only for state charter applications because they are disfavored as compared to local charters. That is, the Board must *deny* a statewide charter application unless it makes certain findings (§ 47605.8, subd. (b)), while a school district must *grant* a charter application

---

entities and the procedures to guarantee those rights; (2) the obligation of eligible entities to provide a fair procedure for clients who are denied services; and (3) the requirement that community agencies select tripartite boards that include persons who represent the poor; the regulations must also ensure operative democratic procedures which may include criteria for tenure, geographic representation, and elections. (Gov. Code § 12781, subd. (d).) The statute thus specifically calls for both substantive regulations and adjudicatory procedures. Section 47605.8, in contrast, directs the Board to adopt regulations "for the implementation of this section," and to "ensure that a charter school approved pursuant to this section meets all requirements otherwise imposed on charter schools . . . ." By its terms, the statute directs only the adoption of substantive regulations; it does not direct the adoption of regulations defining "due process rights," "[fair procedures] to guarantee those rights," or any other similar adjudicatory rules.

24

unless it makes certain findings (§ 47605, subd. (b)).  According to petitioners, this "mirror image" presumption in favor of local charters and against state charters supports the notion that the legislature intended to impose on the Board a more procedurally rigorous fact-finding requirement for State charters.  This, of course, is pure speculation.  Reading the Act as a whole, one could speculate that the opposite conclusion is equally plausible, because the fact-finding required before a school district can deny a charter application is far more detailed and rigorous than the general finding required to be made by the Board before approving a state charter.  (Compare § 47605, subd. (b)(1)–(5) with § 47605.8, subd. (b).)  Additionally, the same presumption applies to county charters (§ 47605.6, subd. (a)(1)), yet petitioners do not contend an action on a county charter is or should be quasi-judicial.  Thus, petitioners' hypothesis, that the Legislature intended *state* charter applications—but no other charter applications—to be determined by an adjudicatory process, finds no support in the Act.

    5.    Summary

    The Legislature adopted section 47605.8 to authorize the approval (or denial) of a petition for a state charter school, and directed the Board to "adopt regulations . . . for the implementation of [section 47605.8]" and to ensure that a state charter school "meets all requirements otherwise imposed on charter schools. . . ."  (§ 47605.8, subd. (a).)  We have concluded that the approval (or denial) of a state charter petition is a quasi-legislative function.  We have further concluded that the adoption of regulations for the "implementation" of a statute is governed by the rulemaking provisions of the APA.  These principles lead inexorably to the conclusion that petitioners' "literal" reading of the reference to Government Code section 11500 et seq. contained in section 47605.8 as requiring the adoption of *adjudicatory* procedures for state charter petitions would produce an anomalous and absurd result.  (See *In re J.W.* (2002) 29 Cal.4th 200, 210 ["[C]ourts will not give statutory language a literal meaning if doing so would result in absurd consequences that the Legislature could not have intended"].)

25

We therefore disagree with the trial court's conclusion that the reference to Chapter 5 of the APA in section 47605.8 must be given effect because the language is "unambiguous and specific." As the United State Supreme Court very recently stated, "when deciding whether the [statutory] language is plain, we must read the words 'in their context and with a view to their place in the overall statutory scheme.' [Citation.] Our duty, after all, is 'to construe statutes, not isolated provisions.' [Citation.]" (*King v. Burwell* (2015) 576 U.S. __, __ [135 S.Ct. 2480, 2483].)

C.      *Propriety of Board's Current Policies and Procedures*

In a fallback argument, petitioners assert that even if section 47605.8, subdivision (a), does not require quasi-judicial procedures, the Board is still in violation of that provision because the Board is "relying upon policies and procedures for the review and evaluation of statewide benefit charters that have not been adopted in compliance with the rulemaking provisions of the APA. . . ." The problem with this contention is that it was never litigated and was not the basis of the judgment that petitioners seek to preserve.

1.      The Contention Was Not Waived

We first address the Board's argument that petitioners waived this claim because they abandoned it in the superior court. The record does not support this assertion. In the briefing below, petitioners argued that even if section 47605.8 refers to a rulemaking process, the Board is still in violation of the APA because it is using its own "internal practices" to process state charter petitions and has failed to adopt any regulations that would give the public notice of the procedures to be used for reviewing, amending, objecting to, hearing, and making decisions on state charter petitions. Petitioners further argued, as they did initially, that the purpose of the APA is to give interested parties a right to participate in the development of such regulations. It is clear petitioners did not forsake their fallback contention in the trial court.

26

## 2. The Issue Has Not Been Adequately Briefed

The question we face is whether petitioners' alternative theory can be adjudicated in the first instance in this appeal. It cannot. The issue petitioners pose has had an amoeba-like evolution that prevents any organized discussion of its merits.

As we have described, petitioners' original complaint was that the ACCS was using policies and procedures that had not been promulgated under the APA to review state charter petitions. To be fair, petitioners also briefly argued that the Board had failed to adopt *any* rules governing the statewide charter application process. But this latter issue was *not* adjudicated in the original proceedings or on the first appeal. We decided only that the trial court had erred in concluding that the allegations of the complaint did not state a claim. We made clear that, on remand, it was for petitioners to prove in the first instance that the policies and procedures being used were *in fact* not in compliance with the APA.

On remand, petitioners never sought to prove that the policies and procedures *being used* violated the APA, which was the theory in their pleading; instead they presented a different argument—that the Board was required to *adopt* a set of *adjudicatory* procedures. Their fallback position also took a slightly different approach. Rather than argue the Board had *no* regulations in place to govern their procedure, they argued that the Board's use of its *general* hearing-related bylaws and regulations, which are not specific to state charter applications, does not satisfy the APA—an argument they repeat on appeal. Again, this issue was not adjudicated below. On appeal, the Board disputes petitioners' premise and has argued perfunctorily that the general provisions of the Bagley-Keene Open Meeting Act and the Board's general hearing regulations (Cal. Code Regs., tit. 5, §§ 18460–18464) *do* apply to state charter applications, and no special regulations are needed. Neither party, however, provides any useful analysis. In short, this issue has been a moving target that was never coherently argued.

We shall therefore remand the matter once again to allow the parties to litigate the question properly, and to allow the trial court to decide it in the first instance. On

27

remand, we remind petitioners of the importance of framing issues with reference to the pleadings and of seeking leave to amend or to supplement the pleadings if they wish to litigate additional issues.  (*Emerald Bay*, *supra*, 130 Cal.App.4th at p. 1091.)

### III.  DISPOSITION

The judgment is reversed.  The matter is remanded for further proceedings consistent with this opinion.


_____
Rivera, J.


We concur:


_____
Ruvolo, P. J.


_____
Reardon, J.

**CERTIFIED FOR PARTIAL PUBLICATION[*]**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CALIFORNIA SCHOOL BOARDS ASSOCIATION ET AL., <br><br>    Petitioners and Respondents, <br><br>v. <br><br>STATE BOARD OF EDUCATION, <br><br>    Respondent and Appellant; <br><br>ASPIRE PUBLIC SCHOOLS, INC., <br>    Real Party in Interest | A136327 <br><br>(Alameda County <br>Super. Ct. No. RG07353566) <br>**Order for Modification and Partial Publication** |

THE COURT:

The written opinion, which was filed on September 4, 2015, has now been certified for partial publication pursuant to rules 8.1105(b) and 8.1110, and is ordered published, as delineated in this order, in official reports.

Further, the written opinion is ordered modified as follows:

In section I(E), page 9, second full paragraph, the sentence "Back in court, the Board and Aspire filed a motion for summary adjudication, which was denied" should be modified to read "Back in court, petitioners filed a motion for summary adjudication, which was denied."

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion, as modified in this order, is certified for publication with the exception of sections I, II(B), and II(D).

A new section II(A), titled "The Statute," should be added under section II, "Discussion." Under new section II(A), the following paragraphs should be added:

"For clarity in the published portion of the opinion, we restate here the relevant provisions of section 47605.8:
"(a) A petition for the operation of a state charter school may be submitted directly to the state board, and the state board shall have the authority to approve a charter for the operation of a state charter school that may operate at multiple sites throughout the state. The State Board of Education shall adopt regulations, pursuant to the Administrative Procedure Act (Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code) for the implementation of this section. Regulations adopted pursuant to this section shall ensure that a charter school approved pursuant to this section meets all requirements otherwise imposed on charter schools pursuant to this part, except that a state charter school approved pursuant to this section shall not be subject to the geographic and site limitations otherwise imposed on charter schools. . . . [¶] (b) The state board shall not approve a petition for the operation of a state charter school pursuant to this section unless the state board makes a finding, based on substantial evidence, that the proposed state charter school will provide instructional services of statewide benefit that cannot be provided by a charter school operating in only one school district, or only in one county. The finding of the state board in this regard shall be made part of the public record of the proceedings of the state board and shall precede the approval of the charter. [¶] . . . [¶] (d) The state board shall not be required to approve a petition for the operation of a state charter school, and may deny approval based on any of the reasons set forth in subdivision (b) of Section 47605.6." "

Former section II(A), titled "Is Petitioners' APA Claim Outside the Pleadings?" should be renumbered as section II(B).

Former section II(B), titled "The Merits of Petitioners' APA Claim," should be renumbered as section II(C). The subsections under former section II(B) should also be renumbered as sections II(C)(1), II(C)(2), II(C)(3), II(C)(4), and II(C)(5).

Under the new section II(C), and before new section II(C)(1), the following paragraph should be added:

"As we have stated, the question posed is whether the reference to Government Code § 11500 et seq. in the statute was intended by the Legislature or was a scrivener's error."

30

In the new section II(C)(3), titled "Quasi-Legislative vs. Quasi-Judicial Acts," the sentence in the third full paragraph reading "Here, the exercise of discretion by the Board in creating—or not creating—a state charter school involves considerations of interests beyond those of just the applicant" should be modified to read "Here, the exercise of discretion by the Board in creating—or not creating—a state charter school involves consideration of interests beyond those of just the applicant."

Former section II(C), titled "Propriety of Board's Current Policies and Procedures," should be renumbered as section II(D).  The subsections under former section II(C) should also be renumbered as sections II(D)(1) and II(D)(2).

There is no change in judgment.

Dated: _____                    _____, P.J.

California School Boards Association et al. v. State Board of Education (A136327)

Trial Court                                     Alameda County Superior Court

Trial Judge                                     Honorable Jo-Lynne Q. Lee, Honorable Kenneth
                                                Mark Burr

Attorneys:

Office of the Attorney General, Kamala D. Harris, Attorney General; Julie Weng-Gutierrez,
        Assistant Attorney General; Gregory D. Brown, Deputy Solicitor General; and Deputy
        Attorneys General Karin S. Schwartz, Susan M. Carson, and Hadara R. Stanton for
        Respondent and Appellant.

Procopio, Cory, Hargreaves & Savitch LLP, Gregory V. Moser, Greta A. Proctor; California
        Charter Schools Association, Ricardo J. Soto, Julie A. Umansky, and Phillipa L.
        Altmann for Amicus Curiae California Charter Schools Association on behalf of
        Respondent and Appellant and Real Party in Interest.

Laura P. Juran, for Petitioner and Respondent California Teachers' Association.

Olson, Hagel & Fishburn, Deborah B. Caplann, Richard C. Miadich, and Joshua R. Daniels
        for Petitioners and Respondents California School Boards Association, Education Legal
        Alliance, Association of California School Administrators, and Stockton Unified
        School District.

Middleton, Young & Minney, LLP, Paul C. Minney, Michael E. Hersher, and Andrew G.
        Minney for Real Party in Interest.