Filed 7/11/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| OXFORD PREPARATORY ACADEMY, | D074703 |
| Plaintiff and Appellant, | (Super. Ct. No. CIVDS1710045) |
| v. | |
| CHINO VALLEY UNIFIED SCHOOL DISTRICT et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, David S. Cohn, Judge.  Reversed and remanded with directions.

Theodora Oringher, Brian J. Headman, Jon-Jamison Hill; Connor, Fletcher & Hedenkamp, Edmond M. Connor, Matthew J. Fletcher, and Douglas A. Hedenkamp for Plaintiff and Appellant.

California Charter Schools Association, Ricardo J. Soto, Julie Ashby Umansky, and Phillipa Altmann for amicus curiae on behalf of Plaintiff and Appellant.

Law Offices of Margaret A. Chidester & Associates, Dylan E. Conroy, Steven R. Chidester, and Margaret A. Chidester for Defendants and Respondents.

This appeal arising from a mandamus action in the superior court presents novel issues regarding the proper scope of judicial review of a school district's decision to deny a petition to renew a charter school. Below, the trial court concluded it had to apply an extremely deferential standard of review because it believed the governing board of the Chino Valley Unified School District (District) was performing a quasi-legislative action when it denied the renewal petition submitted by Oxford Preparatory Academy (the Academy), an existing charter school within the District. Finding that the District's decision was not arbitrary or capricious, the trial court denied the Academy's writ petition.

On appeal, the Academy contends the trial court applied the incorrect standard of review because the District's decision was quasi-judicial in nature and, therefore, the trial court should have applied a less deferential standard of review.

In this matter of first impression, we conclude that a school district's decision pursuant to Education Code sections 47605 and 47607[1] to deny a charter school's renewal petition is a quasi-judicial action subject to review via a petition for administrative mandamus. In considering a renewal petition, the school district is not acting in a legislative function by creating new policy, but rather performing a quasi-judicial function by applying existing standards and rules defined by state statute to determine whether the evidence presented by the charter school regarding its past

_____

[1] All further statutory references are to the Education Code unless otherwise specified.

2

performance is sufficient to satisfy those standards. The applicable statutes allow the District to deny a renewal petition only after conducting a hearing and making specific factual findings. This process bears all the hallmarks of a quasi-judicial action. Additionally, we conclude that after a charter school's initial petition is approved by a school district, the petitioner has a fundamental vested right to continue operating the charter school such that a school district's decision that deprives the petitioner of that right is subject to independent judicial review.

The trial court did not apply these standards when reviewing the District's decision. Accordingly, we must reverse and remand for reconsideration of the Academy's writ petition under the correct standards.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2009, the District granted the Academy's initial petition to open a charter school within the District. The Academy opened in the fall of 2010 for its first school year and ultimately enrolled approximately 1,200 children in kindergarten through eighth grade.

Near the end of its initial two-year charter, the Academy sought and obtained a five-year renewal to operate its charter school through June 30, 2017. As the end of the renewal period approached, the Academy submitted a petition for renewal to the District in January 2016. Due to concerns regarding financial irregularities and the Academy's governance structure, the District board denied the renewal petition in March 2016.

In response, the Academy made significant changes to its structure and financial relationships to address the District's concerns. It then submitted a new renewal petition reflecting these changes in September 2016. In its 617-page petition, the Academy

3

detailed its academic success over the past five years, relying on academic test scores and other metrics to claim it was "the top performing K-8 public school in San Bernardino County."

As required by state law, the District held a public hearing on the renewal petition in October 2016. At its next meeting in November, the District board voted unanimously to deny the renewal petition. In a detailed 62-page resolution, the board made numerous findings of fact to support its conclusions that: (1) the Academy was "demonstrably unlikely to successfully implement the program set forth in the . . . charter renewal petition. [Citation]"; (2) the "renewal petition fails to contain reasonably comprehensive descriptions of eight of the fifteen required elements of a charter petition. [Citation]"; and (3) the "charter renewal petition fails to provide all of the required affirmations and assurances required to comply with California State law. [Citation.]"[2] (Boldface omitted.)

Following the procedures defined by state law, the Academy appealed the District's decision to the San Bernardino County Office of Education, which declined to consider the appeal. The Academy then appealed to the California State Board of Education, which denied the appeal.

---

[2] The District's decision is supported by detailed factual findings regarding its concerns about the Academy's leadership and financial irregularities. We do not delve into the details of those findings not because we consider them to be inconsequential, but rather because they are irrelevant to our analysis. For the reasons discussed *post*, our holding as to the preliminary error by the trial court regarding the proper standard of review precludes our analysis of the merits of the District's decision. We express no opinion as to whether the District's decision is supported by sufficient evidence.

4

The Academy then sought judicial relief. It filed a petition for writ of mandate in the superior court and requested a temporary restraining order to allow it to continue operation during the pendency of the lawsuit. The trial court granted the restraining order pending its final decision.

The Academy argued that it was seeking writ relief under sections 1094.5 and 1085 of the Code of Civil Procedure. It argued the trial court should apply its independent judgment to determine whether the District's decision was supported by the weight of the evidence.

The District responded by claiming that the trial court should instead apply a deferential standard of review limited to "an examination of whether the agency's actions were arbitrary, capricious, or entirely lacking in evidentiary support."

At the hearing on the petition, the court focused on determining the proper standard of judicial review. As the court explained, it believed "the linchpin of this analysis is whether this is quasi-legislative or quasi-judicial." The court expressed its belief that if the District's decision was quasi-judicial and the heightened standard of review applied, it did not believe the District made the necessary findings to support its denial of the charter renewal petition. In the end, the court conceded this was a "very close case," but concluded the District's decision was quasi-legislative. Applying the deferential standard of review, the court then denied the writ petition.

The court subsequently entered a judgment in favor of the District. The Academy appeals.

5

DISCUSSION

I.      *The District's Motion to Dismiss*

As a preliminary matter, the District filed a motion to dismiss the Academy's appeal, claiming that since the Academy did not open for the new school year in the fall of 2017 and began the closure process, the pending appeal was rendered moot. It further contends that the issues raised on appeal do not involve matters of "continuing public interest" warranting adjudication of the appeal despite the alleged mootness.

In opposition, the Academy rejects the contention that this court cannot offer any effective relief. It admits that its school is no longer operating and the District has retaken the physical school site, but contends this "interim lapse" in operation does not preclude effective judicial relief by compelling the District to reconsider the Academy's renewal petition or to find that the Academy's petition was renewed by operation of law.

"An appeal should be dismissed as moot when the occurrence of events renders it impossible for the appellate court to grant appellant any effective relief." (*Cucamongans United for Reasonable Expansion v. City of Rancho Cucamonga* (2000) 82 Cal.App.4th 473, 479 (*Cucamongans*).) Here, the parties fundamentally disagree on whether the closure of the Academy after this appeal was filed renders it impossible for this court to grant any relief.

Although it will undoubtedly be difficult for the Academy to reopen if it succeeds in this judicial action, the District does not establish that it would be *impossible* for the Academy to do so.

6

In the end, however, we need not resolve this largely factual dispute. "[T]here are three discretionary exceptions to the rules regarding mootness: (1) when the case presents an issue of broad public interest that is likely to recur [citation]; (2) when there may be a recurrence of the controversy between the parties [citation]; and (3) when a material question remains for the court's determination [citation]." (*Cucamongans*, *supra*, 82 Cal.App.4th at pp. 479-480.)

The issues raised in this appeal regarding the proper standard for judicial review of a school district decision denying a charter school renewal petition are of broad public interest and likely to recur. Additionally, if the District is correct that a charter school's judicial action challenging the denial of its charter renewal petition becomes moot as soon as a new school year starts, such controversies are likely to evade normal appellate review. Thus, even if the appeal is now moot, exercising our discretion to decide the issues presented is particularly appropriate. (*Chantiles v. Lake Forest II Master Homeowners Assn.* (1995) 37 Cal.App.4th 914, 921.) Accordingly, the motion to dismiss the appeal is denied.

II.     *Quasi-Judicial vs. Quasi-Legislative*

Turning to the merits, the central issue on appeal is the proper standard of judicial review for a district's decision to deny a charter school's renewal petition. This issue of first impression turns on whether the District's decision was quasi-legislative—reviewable via a traditional mandamus action—or quasi-judicial—reviewable via an administrative mandamus action.

7

A traditional mandamus action proceeds under section 1085 of the Code of Civil Procedure and recognizes that quasi-legislative decisions of administrative agencies are entitled to greater deference. "Judicial review of a legislative act under Code of Civil Procedure section 1085 is limited to determining whether the public agency's action was arbitrary, capricious, entirely without evidentiary support, or procedurally unfair." (*San Francisco Tomorrow v. City and County of San Francisco* (2014) 229 Cal.App.4th 498, 509.)

A petition for a writ of administrative mandate, on the other hand, presents "the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b); *Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 810.)

An administrative decision is considered quasi-adjudicatory when the decision is "made as a result of a proceeding in which by law (1) a hearing is required, (2) evidence is required to be taken, and (3) discretion in the determination of facts is vested in the inferior board." (*Eureka Teachers Assn. v. Board of Education* (1988) 199 Cal.App.3d 353, 361.)

"As a general matter, an 'administrative action is quasi-legislative' when the 'administrative agency is creating a new rule for future application . . . .' " (*20th Century Ins. Co. v. Garamendi* (1994) 8 Cal.4th 216, 275.) "By contrast, an 'administrative action

8

is . . . quasi-adjudicative' when the 'administrative agency . . . is applying an existing rule to existing facts.' " (*Ibid.*) "[T]he distinction between the quasi-legislative and quasi-judicial decision contemplates the function performed rather than the area of performance; the breadth or narrowness of the discretion cannot control." (*Pitts v. Perluss* (1962) 58 Cal.2d 824, 834.)

With these legal standards in mind, we consider the function performed by the District within the applicable statutory framework. The Legislature authorized the creation of charter schools when it enacted the Charter Schools Act of 1992. (*United Teachers of Los Angeles v. Los Angeles Unified School Dist.* (2012) 54 Cal.4th 504, 521 (*United Teachers*).) "The charter school legislation sought to encourage educational innovation by creating schools that would be 'free from most state laws pertaining uniquely to school districts.' [Citation.] At the same time, 'charter schools are *strictly* creatures of statute. From how charter schools come into being, to who attends and who can teach, to how they are governed and structured, to funding, accountability and evaluation—the Legislature has plotted all aspects of their existence.' " (*Ibid.*)

The Legislature created the rules that apply to the process for establishing a new charter school, as detailed in section 47605. "The first step, set forth in subdivision (a), is submission to the governing board of a school district a petition signed either by 'a number of parents or legal guardians of pupils that is equivalent to at least one-half of the number of pupils that the charter school estimates will enroll in the school for its first year of operation' or by 'a number of teachers that is equivalent to at least one-half of the number of teachers that the charter school estimates will be employed at the school

9

during its first year of operation.' (§ 47605, subd. (a)(1)(A) & (B).)" (*United Teachers*, *supra*, 54 Cal.4th at p. 521.) "The petition 'shall include a prominent statement that a signature on the petition means that the parent or legal guardian is meaningfully interested in having his or her child or ward attend the charter school, or in the case of a teacher's signature, means that the teacher is meaningfully interested in teaching at the charter school. The proposed charter shall be attached to the petition.' [Citation.]" (*Id.* at p. 522.)

When a governing board of a school district receives a petition that clears the signature threshold, it must hold a public hearing "on the provisions of the charter" within 30 days of receiving the petition. (§ 47605, subd. (b).) Then, following review of the petition and the public hearing, the board must either grant or deny the petition within 60 days of receiving the petition, subject to mutually agreeable extensions. (*Ibid.*)

"The governing board of the school district shall grant a charter for the operation of a school under this part if it is satisfied that granting the charter is consistent with sound educational practice. The governing board of the school district shall not deny a petition for the establishment of a charter school unless it makes written factual findings, specific to the particular petition, setting forth specific facts to support one or more" of six specific findings listed in section 47605, subdivision (b).

A school district may grant a charter for a period not to exceed five years. (§ 47607, subd. (a)(1).) During that period, the governing board may revoke the charter if it finds, through a showing of substantial evidence, that the charter school failed to perform as evidenced by one of four specific violations or failures. (*Id.*, subd. (c)(1).)

10

Before revocation, the board must notify the charter school of any violation, provide a reasonable opportunity to remedy the violation, unless it finds the violation to constitute a severe and imminent threat to the health or safety of pupils (*id.*, subd. (d)), and thereafter "hold a public hearing . . . on the issue of whether evidence exists to revoke the charter." (*Id.*, subd. (e).)

At the end of the initial charter period, the school must seek renewal of its petition for an additional five-year period if it wishes to continue to operate. (§ 47607, subd. (a).) The renewal petition is governed by the same standards that apply to the original petition, but the governing board must consider "pupil academic achievement for all groups of pupils served by the charter school as the most important factor in determining whether to grant a charter renewal." (*Id.*, subd. (a)(3)(A).) The charter school must demonstrate it meets one of the five alternative tests for showing pupil academic achievement is satisfactory. (*Id.*, subd. (b)(1)-(5).)

When considering a renewal petition, the governing board "shall consider the past performance of the school's academics, finances, and operation in evaluating the likelihood of future success, along with future plans for improvement if any." (Cal. Code Regs., tit. 5, § 11966.4, subd. (b)(1).) The board may deny a renewal petition only if it "makes written factual findings, specific to the particular petition, setting forth specific facts to support one or more of the grounds for denial set forth in Education Code section 47605[, subdivision ](b) or facts to support a failure to meet one of the criteria set forth in Education Code section 47607[, subdivision ](b)." (*Id.*, subd. (b)(2).) If the board fails to

11

act on the petition within 60 days of receipt, the renewal petition is deemed approved. (*Id.*, subd. (c).)

Considering these procedures as a whole, we believe the trial court erred in finding the District's decision to be quasi-legislative. When reviewing the Academy's renewal petition, the District applied standards set by existing state law and regulations to the facts presented in the petition and gathered by the District itself. It held a public hearing to gauge community support, allowed speakers to make their case, and then made specific factual findings regarding the Academy's ability to operate the charter school successfully. The District's board then passed a 62-page resolution detailing the specific evidence supporting each of its factual findings, which in turn, supported its ultimate decision to deny the renewal petition. Although the District was required to consider its overarching public policy goals in reaching its decision, it was not crafting a new policy to be applied in future cases.

To argue to the contrary, the District asks this court to follow the reasoning of *California School Boards Assn. v. State Bd. of Education* (2015) 240 Cal.App.4th 838 (*CSBA*), to conclude that a decision concerning the renewal of a charter school is quasi-legislative rather than quasi-judicial. In *CSBA*, the appellate court considered the standards that apply to a decision by the State Board of Education concerning whether to grant or deny an initial application for a "state charter school" pursuant to Education Code section 47605.8. (*CSBA*, at p. 842.) That decision, however, is entirely distinguishable for two important reasons.

First, the issue in *CSBA* was whether a decision on an initial charter school petition is quasi-legislative, whereas this case involves a decision on a petition to renew a charter school application. Even if we assume that *CSBA* correctly decided that a decision on an *initial* charter petition is quasi-legislative, an issue not presented in this case, a school district's decision on a *renewal* petition is fundamentally different. As discussed *ante*, a governing board reviewing a renewal petition "shall consider the past performance of the school's academics, finances, and operation in evaluating the likelihood of future success, along with future plans for improvement if any." (Cal. Code Regs., tit. 5, § 11966.4, subd. (b)(1).) The school's past pupil academic achievement is the "most important factor in determining whether to grant a charter renewal" and the board must apply one of five alternative tests to adjudge whether the past performance is satisfactory. (Ed. Code, § 47607, subds. (a)(3)(A), (b)(1)-(5).) In other words, whereas an initial petition must necessarily involve a prospective evaluation, a renewal petition is focused in large part on a retrospective evaluation, considering evidence of the school's past performance against objective standards to determine whether the school is likely to succeed in the future. This determination is quintessentially adjudicatory in nature and distinct from the decision under review in *CSBA*.

Second, the decision in *CSBA* is distinguishable because it involved a decision by the State Board of Education concerning a statewide charter school, whereas the issue in this case concerns a decision by a governing board of a local school district on a local charter school. Although the process to establish a state charter school shares many similarities with the procedure for a local charter school, the procedures are not identical.

13

Indeed, the court in *CSBA* noted these differences, explaining that whereas the State Board of Education must *deny* a statewide charter application unless it makes certain findings, a school district must *grant* a charter application unless it makes certain findings. (*CSBA*, *supra*, 240 Cal.App.4th at p. 853.) The petitioner in *CSBA* relied on this distinction to argue that even if decisions on local charter school applications are quasi-legislative—a question not in dispute in *CSBA*—decisions on state charter school applications alone are adjudicatory because they entail a more rigorous factfinding requirement. (*Ibid.*) The court, however, rejected this contention, "because the factfinding required before a school district can deny a charter school application is far more detailed and rigorous than the general finding required to be made by the Board before approving a state charter." (*Id.* at p. 853.) The *CSBA* court ultimately found that because these procedural differences could be interpreted to equally support different conclusions, there was little to draw from comparing state and local charter school decisions as a basis to conclude whether those decisions are adjudicatory or legislative. Similarly, we decline to rely on the *CSBA* court's decision regarding state charter school decisions as a basis to conclude local decisions are identically legislative in nature. Given these differences, our holding that a decision of a school district regarding a charter school renewal petition is quasi-judicial does not conflict with the holding of *CSBA* that the State Board of Education makes a quasi-legislative decision when it considers a petition to establish a state charter school.

Even setting aside these distinctions, we are not persuaded by the reasoning of *CSBA*. The court first relies on the general principle that the creation and alteration of

14

municipalities and local districts are fundamentally legislative decisions. Thus, because a charter school is " 'deemed to be a "school district" ' " for funding purposes, "the approval of a charter school creates a school district and, like the creation of any other district, is a quasi-legislative act." (*CSBA*, *supra*, 240 Cal.App.4th at p. 846.)

Simply because certain funding allocations concerning school districts imposed by the state constitution and statutes also apply to charter schools does not logically lead to the conclusion that a charter school is a school district. As amicus curiae California Charter Schools Association notes in a brief filed in this appeal, section 47610 exempts charter schools from nearly all laws governing school districts. The applicable statutes that govern the establishment of a charter school discuss establishing that school *within* the school district, not as a school district. (See *id*., subd. (a)(1).) Although there is some overlap in funding mechanisms, a charter school is not a school district.

The court in *CSBA* next cites the general principle that "the hallmark of a quasi-legislative decision is that the agency's determination is informed by public policy, that is, how the decision will affect the interests of the community." (*CSBA*, *supra*, 240 Cal.App.4th at p. 847.) The court applied that principle to conclude the approval of a charter school petition "is a quintessentially quasi-legislative action" because the decision "should include consideration of the charter's effects on local school districts and should take into account public concerns regarding the proposed charter and its conditions of approval." (*Id.* at p. 848.)

However, this analysis ignores the fundamental focus in distinguishing between quasi-legislative and quasi-judicial actions on " 'the nature of the *function* performed.' "

15

(*CSBA*, *supra*, 240 Cal.App.4th at p. 847.)  Simply because a public agency considers public policy and the effect on a community when making a decision does not turn a quasi-judicial function into a quasi-legislative function.  Indeed, courts themselves often grapple with public policy and the effect of decisions on the community when making judicial decisions.

When considering a petition to establish or renew a charter school, the district's governing board must, and should, consider public policy.  But in considering the petition, the board is performing the function of adjudging whether the charter school's past performance and future plans fulfill the statutory requirements for the renewal of a charter school as set forth in state law.  The state Legislature created the policies that apply to a charter school renewal petition; it is not a matter left within the quasi-legislative discretion of local school districts.  A local district governing board cannot deny a renewal petition simply because it finds that the continued operation of the charter school would adversely impact the community as a whole.  Instead, it may deny a renewal petition only by making at least one of several specific factual findings defined by state law.  (Cal. Code Regs., tit. 5, § 11966.4, subd. (b)(2).)  Although the board should be guided by fundamental principles of public policy, those principles are not the dominant concern under the applicable legal framework.

As guided by the relevant statutes, the District's board was performing a quasi-judicial action when it considered the evidence presented by the Academy in its renewal petition, conducted a public hearing, and then issued detailed findings to support its conclusion that the Academy failed to meet the legal standards for a renewal of their

16

charter.  Accordingly, the trial court was required to consider the Academy's writ petition pursuant to the procedures and standards applicable to administrative mandamus proceedings under section 1094.5 of the Code of Civil Procedure.  (See, e.g., *American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 294-295 [administrative mandamus procedures apply to judicial proceeding involving charter revocation decision].)

By erroneously determining the District's decision was a quasi-legislative action, the trial court applied an incorrect standard of review.  Courts generally review an agency's quasi-legislative action with deference to the expertise of the agency.  (*Shapell Industries, Inc. v. Governing Board* (1991) 1 Cal.App.4th 218, 230.)  The trial court does not reweigh the evidence and "confines itself to a determination whether the agency's action has been " ' " 'arbitrary, capricious, or entirely lacking in evidentiary support. . . .' " ' "  (*Ibid.*)  Administrative proceedings that are quasi-judicial in character are reviewed under a less deferential standard, which requires the reviewing trial court to determine whether the agency's findings are supported by evidence.  (*Id.* at p. 231.)

In this action, the trial court did not expressly consider whether the District's factual findings were supported by evidence, but rather simply concluded that the District's decision was not arbitrary or capricious.  Accordingly, we conclude the trial court erred in denying the Academy's writ petition.

III.     *The Nature of the Academy's Right to Continue Operation of Its Charter School*

The District contends that even if we conclude the trial court erred in construing the District's acts as quasi-legislative, that error was not prejudicial such that reversal is

17

not warranted. It asserts that this court may independently review the administrative record to determine whether the District's findings are supported by sufficient evidence to affirm the denial of the Academy's writ petition.

As the District acknowledges, this contention requires resolution of an underlying question concerning the proper scope of judicial review in this particular circumstance. Depending on the nature of the Academy's right involved in the District's decision to not renew its charter, this court conducts either a review of the *District's* decision to determine whether it was supported by substantial evidence or a review of the *trial court's* decision to determine whether it is supported by substantial evidence. The District's argument of harmless error relies on its belief that this court may independently examine the administrative record to review the District's decision for substantial evidence as a basis for bypassing any evidentiary review by the trial court. As discussed *post*, we disagree with the District and conclude that given the nature of the Academy's right involved in the District's decision to not renew its charter, we cannot reach the merits and instead must reverse and remand to the trial court for reconsideration under the proper standard of review.

As discussed *ante*, section 1094.5 of the Code of Civil Procedure governs judicial review of an adjudicatory administrative decision. The scope of judicial review, however, requires the court to decide which of two standards of review applies. "A trial court's review of an administrative decision is subject to two possible standards depending on the nature of the right involved." (*SP Star Enterprises, Inc. v. City of Los Angeles* (2009) 173 Cal.App.4th 459, 468.)

18

"If the administrative decision substantially affects a fundamental vested right, the trial court must exercise its independent judgment on the evidence.  [Citations.]  The trial court must not only examine the administrative record for errors of law, but must also conduct an independent review of the entire record to determine whether the weight of the evidence supports the administrative findings.  [Citation.]  If, on the other hand, the administrative decision neither involves nor substantially affects a fundamental vested right, the trial court's review is limited to determining whether the administrative findings are supported by substantial evidence."  (*Wences v. City of Los Angeles* (2009) 177 Cal.App.4th 305, 313 (*Wences*).)

This distinction arises from the separation of powers doctrine.  As our Supreme Court explained, the "development of a huge administrative bureaucracy" with quasi-adjudicative powers was met with suspicion and fear by the courts that "the burgeoning bureaucracy would endanger the prevailing concepts of individual rights."  (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 142 (*Bixby*).)  Accordingly, courts determined that deprivation of these individual rights by an agency cannot be shielded from judicial protection.  "By carefully scrutinizing administrative decisions which substantially affect vested, fundamental rights, the courts of California have undertaken to protect such rights, and particularly the right to practice one's trade or profession, from untoward intrusions by the massive apparatus of government.  If the decision of an administrative agency will substantially affect such a right, the trial court not only examines the administrative record for errors of law but also exercises its independent judgment upon the evidence disclosed in a limited trial de novo."  (*Id.* at p. 143, fns. omitted.)

19

"The courts must decide on a case-by-case basis whether an administrative decision or class of decisions substantially affects fundamental vested rights and thus requires independent judicial review." (*Bixby, supra*, 4 Cal.3d at p. 144.)  In this analysis, courts must "consider the nature of the right of the individual:  whether it is a fundamental and basic one, which will suffer substantial interference by the action of the administrative agency, and, if it is such a fundamental right, whether it is possessed by, and vested in, the individual or merely sought by him.  In the latter case, since the administrative agency must engage in the delicate task of determining whether the individual qualifies for the sought right, the courts have deferred to the administrative expertise of the agency.  If, however, the right has been acquired by the individual, and if the right is fundamental, the courts have held the loss of it is sufficiently vital to the individual to compel a full and independent review.  The abrogation of the right is too important to the individual to relegate it to exclusive administrative extinction." (*Ibid.*)

A right is fundamental "on either or both of two bases:  (1) the character and quality of its economic aspect; (2) the character and quality of its human aspect." (*Interstate Brands v. Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770, 780.)  "The ultimate question in each case is whether the affected right is deemed to be of sufficient significance to preclude its extinction or abridgement by a body lacking *judicial* power." (*Id.* at p. 779, fn. 5.)

Here, the District's decision to not renew the Academy's charter had the practical effect of closing the school.  In that sense, it is indistinguishable from administrative decisions involving the revocation of a professional license or business permit, which

20

courts have consistently held to affect a fundamental right. (See, e.g., *Coe v. City of San Diego* (2016) 3 Cal.App.5th 772, 787 [decision to revoke business permit]; *Goat Hill Tavern v. City of Costa Mesa* (1992) 6 Cal.App.4th 1519, 1529 (*Goat Hill*) [decision affecting a business owner's "right to continue operating an established business in which he has made a substantial investment"]; *San Benito Foods v. Veneman* (1996) 50 Cal.App.4th 1889, 1897 [suspension of food processing license constituted a fundamental vested right because license "was crucial to plaintiff's economic viability as a food processor"].)

The Academy's right to operate its charter school was also vested. The charter school had been open and operating since 2010. The legal requirement that the Academy seek renewal of its charter every five years does not mean the right to operate the charter school was not vested. In *Anton v. San Antonio Community Hospital* (1977) 19 Cal.3d 802 (*Anton*), the Supreme Court rejected a similar argument in a case involving the nonrenewal of a physician's hospital privileges. (*Id.* at pp. 823-824, superseded by statute on other grounds as noted in *Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 678, fn. 11.)

In *Anton*, the hospital argued that "the right to medical staff membership and associated privileges cannot be considered vested for more than the term of the appointment, and that upon expiration of the term the physician becomes comparable to an applicant for a license or franchise and wholly without a vested right to reappointment." (*Anton*, *supra*, 19 Cal.3d at p. 824.) The court rejected this argument for multiple reasons, most significantly on "consideration that a hospital board, through

21

its act of initially admitting a physician to medical staff membership, has thereby, in the exercise of its discretion, necessarily determined his fitness for such membership at the time of admission *and granted him the full rights of membership*. The fact that review of this appointment is made mandatory on an annual or biennial basis (through a statutory requirement of reappointment at that interval, as determined by the hospital's bylaws) can by no means be said to render it probationary or tentative in effect. [Citation.] In short, the full rights of staff membership *vest* upon appointment, subject to divestment upon periodic review only after a showing of adequate cause for such divestment in a proceeding consistent with minimal due process requirements." (*Id.* at pp. 824-825, fn. omitted; see *Goat Hill*, *supra*, 6 Cal.App.4th at pp. 1519, 1526 [decision to not renew a business's permit involves a vested right because it " 'affects a right which has been *legitimately acquired* or is otherwise vested' "].)

The same analysis applies here. The Academy's right to continue operating its charter school vested upon the District's approval of its initial charter petition, and the fact that review of the charter occurred every five years through a statutory requirement did not render it a temporary right. As discussed *ante*, the District could revoke or decline to renew the charter only after holding a hearing, considering the evidence, and making specific factual findings. Absent such findings, the charter renewed automatically. (Cal. Code Regs., tit. 5, § 11966.4, subd. (c).)

Accordingly, we conclude that a school district's decision to deny a charter school renewal petition substantially affects a fundamental vested right and, thus, requires independent judicial review.

22

The trial court, however, did not provide independent judicial review.[3]

Accordingly, judicial review at the appellate level is precluded.  When the trial court is required to exercise its independent judgment on the evidence, we review the trial court's decision to determine whether its determination is supported by substantial evidence. (*Wences*, *supra*, 177 Cal.App.4th at pp. 305, 318.)  In making that determination, we must resolve all conflicts and indulge all reasonable inferences in favor of the party who prevailed in the trial court.  (*Ibid.*; citing *Barber v. Long Beach Civil Service Com.* (1996) 45 Cal.App.4th 652, 659-660.)

The trial court's failure to apply the proper standard of review precludes this court from reaching the merits of the appeal.  The matter, therefore, must be remanded to the trial court for reconsideration under the proper standard of review.  (*Wences*, *supra*, 177 Cal.App.4th at p. 318.)

---

[3]    The Academy suggests in its briefs that the trial court opined it would have found the District's factual findings to be insufficient to warrant nonrenewal of the charter.  The trial court's comments, however, were not a thorough and considered application of the independent judgment standard.  We therefore decline to give these comments any credence.  (See, e.g., *Saraswati v. County of San Diego* (2011) 202 Cal.App.4th 917, 929, fn. 8.)

DISPOSITION

The judgment is reversed and the matter remanded to the trial court with directions to reconsider the Academy's writ petition under the independent judgment standard of review. The Academy is entitled to recover its costs on appeal.

HUFFMAN, Acting P. J.

WE CONCUR:

AARON, J.

DATO, J.