Filed 10/11/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| ANTHONY RUDICK et al.,<br><br>        Plaintiffs and Appellants,<br>v.<br><br>STATE BOARD OF OPTOMETRY,<br><br>        Defendant and Respondent. | A152179<br><br>(Alameda County<br>Super. Ct. No. RG13708526) |

This is an appeal from judgment after the trial court denied the petition for writ of mandate filed by plaintiffs Anthony Rudick, O.D., and Ridge Eye Care, Inc. (Ridge) and granted summary judgment in favor of defendant State Board of Optometry (Board) and against plaintiffs on their related complaint for declaratory and injunctive relief. On appeal, plaintiffs seek reversal of the judgment and entry of an order directing the trial court to find in their favor on the ground that the trial court erroneously interpreted the applicable statutory law. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On December 23, 2013, plaintiffs filed a combined verified petition for writ of mandate and complaint for declaratory and injunctive relief against the Board challenging its denial of an application for a statement of licensure submitted by Rudick.[1] Plaintiffs' challenge arises from the following set of undisputed facts.

Rudick is a licensed optometrist with his principal place of practice in the Town of Paradise. Rudick is also a 49-percent owner, director, and the vice-president of Ridge.

---

[1] On September 8, 2015, the trial court bifurcated the proceedings with respect to the petition for writ of mandate and the complaint.

1

Ridge, a "medical corporation" under the Moscone–Knox Professional Corporation Act (Moscone–Knox) (Corp. Code, § 13400 et seq.), has four office locations, including in the towns of Paradise and Magalia. Joel Isaac Barthelow, M.D., a licensed physician who practices ophthalmology, is the majority owner, president, and a director of Ridge. Ridge employs both ophthalmologists and optometrists to provide a broad range of professional eye care services to its patients. More specifically, Ridge employs optometrists (one of whom is Rudick) at each of its four locations, who practice optometry as defined by Business and Professions Code section 3041.[2] While the practices of ophthalmology and optometry overlap in certain regards, there are critical differences, including the fact that only ophthalmologists and not optometrists are authorized to perform surgery and to prescribe certain medications.[3] (See, e.g., §§ 3041, 2052.) In addition, ophthalmologists, unlike optometrists, may treat conditions beyond the eye and its immediately surrounding tissues.

In November 2011, Rudick submitted an application for statement of licensure with the requisite fees to the Board for Ridge's Magalia location, identifying himself as the employer of the Magalia location and the Town of Paradise as his principal place of practice. On April 25, 2012, the Board denied Rudick's application. In its letter of denial, the Board explained: "Your application for Statement of Licensure was rejected because you list yourself as the principal employer at the location. In your letter you state that you are 49% shareholder in the business. Per BPC [section] 3077 you need to submit a Branch Office License application if you have a financial interest in that location." Rudick and Ridge thereafter brought this lawsuit to challenge the Board's decision.

---

[2] Unless otherwise stated, all statutory citations herein are to the Business and Professions Code.

[3] Ophthalmologists, like all physicians, are governed by the Medical Practice Act (§ 2000 et seq.) while optometrists are governed by the Optometry Practice Act (§ 3000 et seq.).

On January 28, 2016, the trial court denied plaintiffs' petition for writ of mandate, finding "[i]t is reasonable for the Board to deny the request for a Statement of Licensure when the applicant for the Statement of Licensure is required to obtain a Branch Office License, as otherwise the applicant could be disinclined to obtain the required Branch Office License." The parties then filed cross-motions for summary judgment with respect to plaintiffs' complaint, which were heard on February 14, 2017.

On March 20, 2017, the trial court granted the Board's motion for summary judgment and denied plaintiffs' motion for the same, finding that the Board properly determined Rudick must comply with the branch office licensing requirements in section 3077 for his practice at Ridge's Magalia office since his principal place of practice was in Paradise. Judgment was thus entered in favor of the Board and against plaintiffs on June 14, 2017, prompting this appeal.

**DISCUSSION**

This lawsuit arises out of the licensing application submitted by Rudick to the Board with respect to his practice of optometry at a location other than his principal place of practice, specifically, at Ridge's Magalia location. In California, the practice of optometry is governed by the Optometry Practice Act (Act) (§ 3000 et seq.). The Board is the state agency charged with enforcing the Act. (§ 3010.5.) On appeal, we are asked to address two issues relating to the proper interpretation of two of the Act's provisions, sections 3070 and 3077.[4] First, we must decide whether the trial court properly ruled in favor of the Board and against plaintiffs on summary judgment after upholding the Board's decision not to issue Rudick a statement of licensure under section 3070 and to instead require him to obtain a branch office license under section 3077 for his practice at the Magalia location or face disciplinary action. Second, we turn to whether the trial court properly denied plaintiffs' petition for writ of mandate after finding the Board had

_____

[4] Unless otherwise stated, all citations and references to the Act and, in particular, to sections 3070 and 3077, are to prior versions of the statutes, which were before the trial court when ruling on the relevant motions for summary judgment in 2017.

no mandatory duty under section 3070 to issue Rudick a statement of licensure upon receipt of his application and the applicable fees.

The parties agree both issues before the court are purely legal issues and are therefore subject to de novo review. (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387.) Accordingly, we apply the following rules. "Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them 'their usual and ordinary meaning.' [Citation.] 'The statute's plain meaning controls the court's interpretation unless its words are ambiguous.' [Citations.] 'If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.]" (*Id*. at pp. 387–388.)

Moreover, while statutory interpretation is ultimately an issue resolved by the courts, in an appropriate case, "[a]n agency interpretation of the meaning and legal effect of a statute is entitled to consideration and respect by the courts." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7.) "Courts must, in short, independently judge the text of the statute, taking into account and respecting the agency's interpretation of its meaning, of course, whether embodied in a formal rule or less formal representation. Where the meaning and legal effect of a statute is the issue, an agency's interpretation is one among several tools available to the court. Depending on the context, it may be helpful, enlightening, even convincing. It may sometimes be of little worth." (*Id*. at pp. 7–8.)

With this framework in mind, we turn to the two issues at hand.

## A. The Trial Court's Summary Judgment Ruling.

On April 25, 2012, the Board rejected Rudick's application for statement of licensure for Ridge's Magalia location after concluding that, as a 49-percent minority owner of Ridge and a practicing optometrist, Rudick needed to obtain a branch office license in accordance with section 3077 for each Ridge office other than his principal

4

place of practice.  The trial court agreed and, thus, granted the Board's summary judgment motion and denied plaintiffs' motion.

Section 3070, the basis of Rudick's application, provided in relevant part:  "Before engaging in the practice of optometry, each licensed optometrist shall notify the board in writing of the address or addresses where he or she is to engage in the practice of optometry and, also, of any changes in his or her place of practice.  After providing the address or addresses and place of practice information to the board, a licensed optometrist shall obtain a statement of licensure from the board to be placed in all practice locations other than an optometrist's principal place of practice.  Any licensed optometrist who holds a branch office license is not required to obtain a statement of licensure to practice at that branch office.  The practice of optometry is the performing or the controlling of any of the acts set forth in Section 3041."  (§ 3070, subd. (a), as amended by Stats. 2012, ch. 359, § 1, No. 5A Deering's Adv. Legis. Service, p. 311.)

Section 3077, which the Board relied upon to deny his application, contained several relevant parts.  First, the statute defined " 'office' " as "any office or other place for the practice of optometry."  (§ 3077, subd. (a), as amended by Stats. 2013, ch. 473, § 10, No. 6A Deering's Adv. Legis. Service, p. 427.)[5]  In addition, the statute imposed certain requirements on optometrists practicing in more than one office (like Ridge). Specifically, subdivisions (b) and (c) provided:  "(b) An optometrist, or two or more optometrists jointly, may have one office without obtaining a branch office license from the board. [¶] (c) . . . [N]o optometrist, and no two or more optometrists jointly, may have more than one office unless he or she or they comply with the provisions of this chapter as to an additional office.  The additional office, for the purposes of this chapter, constitutes a branch office."  (§ 3077, subds. (b), (c), as amended by Stats. 2013, ch. 473, § 10, No. 6A Deering's Adv. Legis. Service, p. 427.)  Subdivision (f), in turn, provided that "no branch office may be opened or operated without a branch office license" and "no more than one branch office license shall be issued to any optometrist or to any two

---

[5] See footnote 6, *post*, page 6.

or more optometrists, jointly." (§ 3077, subd. (f), as amended by Stats. 2013, ch. 473, § 10, No. 6A Deering's Adv. Legis. Service, p. 427.) Lastly, subdivision (i) stated: "Nothing in this chapter shall prevent an optometrist from owning, maintaining, or operating more than one branch office if he or she is in personal attendance at each of his or her offices 50 percent of the time during which the office is open for the practice of optometry." (§ 3077, subd. (i), as amended by Stats. 2013, ch. 473, § 10, No. 6A Deering's Adv. Legis. Service, p. 427.)[6]

On appeal, the parties agree the term "office" in section 3077 is the focal point of their dispute. Plaintiffs, joined by amicus curiae California Medical Association (amicus), contend "office" is limited in meaning to an office having optometry as "*the primary purpose of the business*," and does not include an office (like the Ridge offices) that is part of a medical practice run by an ophthalmologist who also employs one or more optometrists. (See § 3109 ["a licensed optometrist may be employed to practice optometry by a physician and surgeon who holds a license under this division and who practices in the specialty of ophthalmology"].) Accordingly, plaintiffs (and implicitly amicus) contend the Board's opinion that section 3077 applies to Rudick's employment at the Magalia location is "clearly erroneous" and entitled to no weight.

The Board, in turn, stands by its opinion that "office" (§ 3077) means any place where optometry is practiced notwithstanding the fact that ophthalmology is also

---

[6] Effective January 1, 2014, section 3077 was amended in several nonsubstantive ways, including, for example, replacing "registered" with "licensed" and "certificate of registration" with "optometrist license." (See History and 2013 Amendment notes, Deering's Ann. Bus. & Prof. Code, § 3077 (2019 supp.) pp. 33–34.) Then, effective January 1, 2019, section 3077 was significantly amended. Relevant here, the Legislature eliminated the requirements in section 3077 that an optometrist obtain a branch office license and be in personal attendance at each of his or her branch offices 50 percent of the time each office is open for the practice of optometry. In addition, the Legislature added a new provision stating that "[n]o optometrist, and no two or more optometrists jointly, may have more than 11 offices." The definition of " 'office,' " however, remained unchanged. (See History and 2018 Amendment notes, Deering's Ann. Bus. & Prof. Code, § 3077 (2019 supp.) pp. 33–34.)

practiced at the location, or that the practicing optometrist is merely a minority owner of the medical corporation where he or she is practicing. As such, the Board deems Ridge a " 'place for the practice of optometry' " because it employs licensed optometrists, including Rudick, to provide patient care, such that Rudick was required to meet the branch office licensing requirements of section 3077, subdivisions (f) and (i), with respect to any Ridge office where he practices other than his principal place of practice. In the Board's view, while Ridge may be for the practice of ophthalmology given that a licensed ophthalmologist is the majority owner and employs ophthalmologists to serve patients, this circumstance does not detract from the fact that Ridge also employs optometrists to serve patients and, as such, is also for the practice of optometry.

We agree with the Board, as its interpretation is firmly rooted in the actual language of the statute. Simply put, "office" means any office where optometry is practiced. Plaintiffs' interpretation, on the other hand, would have us read additional language into section 3077 such that "office" would mean an office where optometry is practiced except where the practicing optometrist is employed by a medical corporation that has an ophthalmologist as the majority owner or is "primarily" for the practice of ophthalmology. We decline to insert any additional restrictions into an otherwise unambiguous provision. (*Imperial Merchant Services, Inc. v. Hunt*, *supra*, 47 Cal.4th at pp. 387–388 [a statute's plain language controls the court's interpretation absent any ambiguity in its words].)[7]

---

[7] We disagree with amicus that section 3077 is internally inconsistent. Specifically, amicus argues subdivisions (a) and (c) of the statute "clearly require that all offices and branch offices for the practice of optometry must be owned by licensed optometrists," while subdivision (i) contradictorily "presumes that an optometrist may operate or maintain a branch office without also owning it." Amicus misreads the statute. Subdivision (a) of section 3077 stated that no person, singly or in combination with others, may "have" an office for the practice of optometry unless he or she is "licensed to practice optometry . . . ." (§ 3077, subd. (a), as amended by Stats. 2013, ch. 473, § 10, No. 6A Deering's Adv. Legis. Service, p. 427.) Subdivision (c) stated in relevant part that "no optometrist, and no two or more optometrists jointly, may have more than one office unless he or she or they comply with the provisions of this chapter as to an addition office" (in other words, comply with the branch office licensing requirements). (§ 3077,

Plaintiffs persist, arguing that the Legislature could not have intended "office" to mean any location where an optometrist works, for two reasons. First, plaintiffs contend defining "office" so broadly would not further the Legislature's purpose for restricting the number of branch office optometry licenses in the first place, which was to " ' "make the practice of optometry less commercial and more professional, 'to insure an adequate measure of personal performance and supervision . . . and the avoidance of the evils of competition which has its place in trade and mercantile pursuits but not in the practice of this profession.' " ' " (Quoting *Rich v. State Bd. of Optometry* (1965) 235 Cal.App.2d 591, 602 and 65 Ops.Cal.Atty.Gen. 366, 371 (1982)). In so arguing, plaintiffs point out that, while Business and Professions Code section 3077 was drafted and implemented in 1959, it was not until 1970 that the law expanded to permit an ophthalmologist to employ an optometrist with the amendment of Business and Professions Code section 3109 (then former section 3103) (Stats. 1970, ch. 1265, § 1, p. 2283), and not until 1980 when it expanded further to permit an optometrist to own a minority interest in a medical

---

subd. (c), as amended by Stats. 2013, ch. 473, § 10, No. 6A Deering's Adv. Legis. Service, p. 427.) Lastly, subdivision (i), as amicus correctly notes, provided, "Nothing in this chapter shall prevent an optometrist from *owning, maintaining, or operating* more than one branch office" so long as he or she meets the aforementioned personal attendance requirement. (§ 3077, subd. (i), as amended by Stats. 2013, ch. 473, § 10, No. 6A Deering's Adv. Legis. Service, p. 427, italics added.) While we agree with amicus that subdivision (i) presumed by its language that an optometrist may maintain, operate *or* own a branch office, we disagree that subdivisions (a) and (c) required ownership. To the contrary, neither provision mentions ownership, instead using the broader term "have." (See Webster's 3d New Internat. Dict. (2002) p. 1039, col. 2 [defining "have" as "to hold, keep, or retain esp. in one's use, service, regard or affection or at one's disposal"].) More importantly, contrary to amicus's suggestion, neither provision purported to bar an optometrist from having an optometry practice in a medical corporation, like Ridge, that also provides ophthalmologic care. Rather, the three provisions, viewed collectively, simply imposed certain requirements on optometrists like Rudick who decide to practice in multiple offices. (See *People v. Cole* (2006) 38 Cal.4th 964, 985 ["Although [Health and Safety Code] section 1395(b) expressly authorizes Knox–Keene plans to employ licensed optometrists to provide professional services, it does *not* provide that optometrists so employed may operate without regard to other professional restrictions"].)

corporation with the enactment of Corporations Code section 13401.5 (Stats. 1980, ch. 1314, § 17.1, p. 4558).[8]  As such, plaintiffs reason the Legislature could not have intended the term "office" in section 3077 to mean "anywhere that optometry is practiced," even in a medical corporation's or ophthalmologist's office, because when the statute was enacted, an optometrist could not be employed by an ophthalmologist or medical corporation.

Second, relying on this same premise, plaintiffs and amicus argue the Board's interpretation of Business and Professions Code section 3077 cannot be reconciled with Business and Professions Code section 3109 and Corporations Code section 13401.5, subdivision (a) because the latter statutes, unlike the former, do not in any way restrict an ophthalmologist from hiring an optometrist or a medical corporation from having an unlimited number of locations.  We reject these arguments.

As an initial matter, plaintiffs' argument based on the timing of the various legislative enactments disregards the well-established presumption that the Legislature, when amending a law or enacting a new law, is aware of and takes into consideration existing law.  (*People v. Overstreet* (1986) 42 Cal.3d 891, 897 ["the Legislature is deemed to be aware of existing laws and judicial decisions in effect at the time legislation is enacted and to have enacted and amended statutes ' "in the light of such decisions as have a direct bearing upon them" ' "].)  This principle is especially apt where, as here, the

---

[8] Section 3109 provides in relevant part:  "Notwithstanding the provisions of this section or . . . of any other law, a licensed optometrist may be employed to practice optometry by a physician and surgeon who holds a license under this division and who practices in the specialty of ophthalmology . . . ."  (Bus. & Prof. Code, § 3109.) Corporations Code section 13401.5, in turn, provides in relevant part that licensed optometrists "may be shareholders, officers, directors, or professional employees of [a medical corporation] so long as the sum of all shares owned by those licensed persons does not exceed 49 percent of the total number of shares of the [medical] corporation . . . , and so long as the number of those licensed persons owning shares in the [medical] corporation . . . does not exceed the number of persons licensed by the governmental agency regulating the . . . corporation."  (Corp. Code, § 13401.5, subd. (a)(4).)

later-amended statute, section 3109, is part of the same Act as the existing statute. (*Bouley v. Long Beach Memorial Medical Center* (2005) 127 Cal.App.4th 601, 607 ["The Legislature . . . may certainly be presumed to know the full text of the laws it is amending"].) Thus, the Legislature, when expanding the law to allow for closer business and working relationships between optometrists and other medical or health professionals, could easily have amended section 3077 to narrow the definition of "office" or to limit or remove its branch office licensing requirements, as plaintiffs now propose. The Legislature's failure to do so leads us to conclude the Legislature intended section 3077 to continue to operate as it had previously, notwithstanding the statutory changes that liberalized other aspects of the optometry practice. (*Ibid.*)

Further, in drawing this conclusion, we acknowledge plaintiffs' point, shared by amicus, that adhering to the plain language of section 3077 could create additional burdens for medical corporations jointly owned by optometrists and ophthalmologists by, for example, imposing additional licensing requirements on optometrists (like Rudick) practicing in multiple locations of the corporation.[9] We also acknowledge amicus's related point that, to the extent section 3077 creates any additional burdens for medical corporations, access to healthcare could be impeded and problems arising out of the current healthcare workforce shortages could be exacerbated. While these concerns may be valid, incidental burdens occurring under section 3077 are not grounds for this court to rewrite an otherwise legal statute. " 'Inconvenience or hardships, if any, that result from following [a] statute as written must be relieved by legislation. . . . Construction may not

---

[9] We agree with the Board that section 3077, on its face, applies only to optometrists, and therefore does not restrict Ridge (or its majority owner) from operating any number of locations or from employing any number of optometrists. Accordingly, amicus's complaint that section 3077 imposes restrictions on the very medical corporations that Moscone–Knox authorizes is misplaced. "Although [Health & Safety Code] section 1395(b) expressly authorizes Knox-Keene plans to employ licensed optometrists to provide professional services, it does *not* provide that optometrists so employed may operate without regard to other professional restrictions." (*People v. Cole*, *supra*, 38 Cal.4th at p. 985.)

10

be substituted for legislation.' (*United States v. Mo. Pac. R. Co.* (1929) 278 U.S. 269, 277–278 [73 L.Ed. 322, 49 S.Ct. 133].)" (*People v. Bell* (2015) 241 Cal.App.4th 315, 357.)

In fact, as plaintiffs anticipated in briefing, the Legislature recently made several changes to section 3077, including eliminating its requirements that an optometrist obtain a branch office license and be in personal attendance at each of his or her branch office 50 percent of the time that each office is open for the practice of optometry. (See History and 2018 Amendment notes, Deering's Ann. Bus. & Prof. Code, § 3077 (2019 supp.) pp. 33–34.) In addition, a new provision was added, providing that "[n]o optometrist, and no two or more optometrists jointly, may have more than 11 offices." (*Ibid.*) These postjudgment changes do not alter the applicable legal analysis on appeal: "When interpreting statutes, we must remain ' "mindful of this court's limited role in the process of interpreting enactments from the political branches of our state government." . . . [Citation.]' . . . ' "Our office . . . 'is simply to ascertain and declare' what is in the relevant statutes, 'not to insert what has been omitted, or to omit what has been inserted.' " [Citation.]' [Citation.] We 'may not, "under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used." [Citation.]' " (*People v. Bell*, *supra*, 241 Cal.App.4th at p. 342.) "That is [the Legislature's] province." (*E.E.O.C. v. Abercrombie & Fitch Stores* (2015) ___ U.S. ___, ___ [135 S.Ct. 2028, 2033].)

In oral argument, the Board asked for the first time that we dismiss this appeal on the ground that the statutory amendments render moot the issue of whether Rudick must obtain a branch office license in accordance with section 3077 for each Ridge location aside from his principal place of practice. As just stated, the new version of section 3077, effective this year, does not require an optometrist to obtain a branch office license or to be in personal attendance at each of his or her branch office 50 percent of the time that each office is open for the practice of optometry. The Board also pointed out in oral argument that any issue with respect to the new provision limiting an optometrist, or two or more optometrists jointly, to 11 offices would not be ripe because there are at present

fewer than 11 Ridge locations. Rudick, however, disagreed that this appeal is moot or unripe, arguing that the key issue here centers on the statutory definition of "office," which was not amended by the Legislature.

There are, of course, three discretionary exceptions to the rule that an appeal must be dismissed if no effective relief can be granted to an appellant: " '(1) when the case presents an issue of broad public interest that is likely to recur [citation]; (2) when there may be a recurrence of the controversy between the parties [citation]; and (3) when a material question remains for the court's determination [citation].' [Citation]" (*Oxford Preparatory Academy v. Chino Valley Unified School Dist.* (2019) 37 Cal.App.5th 413, 422.)

In this case, we accept Rudick's argument that the focal point of the parties' dispute is the proper interpretation of the term "office" in section 3077, which remains unaffected by the recent statutory changes. As such, this particular statutory interpretation issue may recur in a future dispute among the parties regarding how the Act's licensing and other requirements apply to the Ridge locations. We therefore decline to dismiss this appeal on mootness grounds.

In any event, for the reasons set forth above, we nonetheless affirm the trial court's summary judgment order based, as it was, on the Board's decision that Rudick must obtain a branch office license for each Ridge location aside from his principal place of practice because, for purposes of section 3077, "office" means any place where optometry is practiced notwithstanding the fact that ophthalmology is also practiced at the location, or that the practicing optometrist is merely a minority owner of the medical corporation where he or she is practicing.

**B.     The Trial Court's Denial of the Petition for Writ of Mandate.**

Finally, we address plaintiffs' remaining argument that the trial court erred in denying their petition for a writ of mandate seeking an order requiring the Board to discharge its "mandatory duty" under section 3070 to issue Rudick a statement of licensure. As the Board points out, plaintiffs have not appealed this order, which was entered on January 28, 2016. Rather, plaintiffs' notice of appeal identifies only one order

12

as that being appealed:  the judgment after an order granting a summary judgment motion entered on June 13, 2017.  "Despite the rule favoring liberal interpretation of notices of appeal, a notice of appeal will not be considered adequate if it completely omits any reference to the judgment being appealed."  (*Shiver, McGrane & Martin v. Littell* (1990) 217 Cal.App.3d 1041, 1045; accord, Cal. Rules of Court, rule 8.100(a)(2) ["The notice of appeal must be liberally construed.  The notice is sufficient if it identifies the particular judgment or order being appealed"].)  Accordingly, under this settled law, plaintiffs have failed to preserve their right of appeal of the order denying their petition for writ of mandate, a point which they implicitly concede by failing to respond in their reply brief to the Board's argument on this point.[10]

## DISPOSITION

The judgment is affirmed.

---

[10] At oral argument, plaintiffs' counsel conceded that, even assuming this issue had been preserved for appeal, plaintiffs' challenge to the denial of their petition for writ of mandate would be moot in light of the aforementioned statutory amendments.

_____
Wick, J.[*]


WE CONCUR:



_____
Siggins, P. J.



_____
Petrou, J.


A152179/*Rudick v. State Bd. of Optometry*

_____

[*] Judge of the Superior Court of Sonoma County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

A152179/Rudick v. State Bd. of Optometry

Trial Court:   Superior Court of Alameda County

Trial Judge:   Michael M. Markman, J.

Counsel:       Law Offices of Craig S. Steinberg and Craig S. Steinberg for Plaintiffs and Appellants.

              Center for Legal Affairs, Francisco J. Silva and Long X. Do for California Medical Association as Amicus Curiæ on behalf of Plaintiffs and Appellants.

              Xavier Becerra, Attorney General, Linda Schneider, Assistant Attorney General, Diann Sokoloff and Gregory Tuss, Deputy Attorneys General, for Defendant and Respondent.